968 F.2d 1224
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 James OPOKU, Petitioner,
v.
IMMIGRATION & NATURALIZATION SERVICE, Respondent.
 No. 91-9555.
 United States Court of Appeals, Tenth Circuit.
 July 15, 1992.
 
 Before LOGAN, EBEL and KELLY, Circuit Judges.
 ORDER AND JUDGMENT*
 EBEL, Circuit Judge.
 
 
 1
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.
 
 
 2
 Petitioner James Opoku has filed a petition for review of a decision of the Immigration and Naturalization Service denying his applications for asylum, withholding of deportation, and suspension of deportation; and his motion to reopen. Upon review of the record and the parties' briefs, we affirm.
 
 
 3
 Opoku, a native of Ghana, entered the United States on a student visa in 1979. In 1983, he violated his nonimmigrant status by working without authorization and deportation proceedings were initiated. See 8 U.S.C. § 1251(a)(9) (currently found at § 1251(a)(C)(i)). Opoku admitted deportability and applied for asylum pursuant to 8 U.S.C. §§ 1101(a)(42), 1158; withholding of deportation pursuant to 8 U.S.C. § 1253(h); and suspension of deportation pursuant to 8 U.S.C. § 1254(a).
 
 
 4
 An immigration judge (IJ) denied the applications and granted Opoku voluntary departure. Opoku appealed to the Board of Immigration Appeals (BIA) and filed a motion to reopen and reconsider based on new information. The Board dismissed the appeal and denied the motion.
 
 
 5
 In his petition for review, Opoku argues that the BIA erred in denying his applications. He also argues that the BIA erred in denying his motion to reopen.
 
 
 6
 The Immigration and Nationality Act provides two methods by which an otherwise deportable alien claiming persecution if he is deported can seek relief. INS v. Cardoza-Fonseca, 480 U.S. 421, 423 (1987). The Attorney General has the discretion to grant asylum to an alien who is unwilling or unable to be repatriated due to past "persecution or a well-founded fear of [future] persecution" in accordance with 8 U.S.C. § 1101(a)(42). Id. The Attorney General must withhold deportation of an alien who shows that his life or freedom would be threatened if he were to be deported under 8 U.S.C. § 1253(h). Id. Thus, the Act establishes "a broad class of refugees who are eligible for a discretionary grant of asylum, and a narrower class of aliens who are given a statutory right not to be deported to the country where they are in danger." Id. at 424.
 
 
 7
 The alien must prove eligibility for asylum "by establishing that he or she is a refugee. To establish refugee status, the alien must prove either past 'persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.' " Kapcia v. INS, 944 F.2d 702, 706 (10th Cir.1991) (quoting 8 U.S.C. § 1101(a)(42)).
 
 
 8
 We review the factual findings underlying the BIA's decision denying an application for asylum and prohibiting deportation for substantial evidence. Desir v. Ilchert, 840 F.2d 723, 726 (9th Cir.1988).
 
 
 9
 The record shows that Opoku left Ghana in fear of his life. He asserted that, as a member of the "Ghanian Students for Freedom," he was an outspoken critic of the government and its leaders and was considered an enemy of the existing military regime. He fled Ghana because the government was looking for him.
 
 
 10
 The record supports the BIA's holding that Opoku did not suffer persecution in Ghana. Persecution has been defined "as the infliction of suffering or harm upon those who differ (in race, religion, or political opinion) in a way regarded as offensive. ' "Persecution" or "well-founded fear of persecution" encompass[es] more than just restrictions or threats to life and liberty.' " Zalega v. INS, 916 F.2d 1257, 1260 (7th Cir.1990) (quoting, among others, Desir, 840 F.2d at 726) (citation omitted).
 
 
 11
 Opoku did not allege that he was harassed or arrested. Further, while he submitted materials regarding existing conditions in Ghana, Opoku did not show that his beliefs or writings were "known to the present Ghanian government, or that he would be perceived as a threat to that government...." Administrative R. at 54. The BIA noted various Amnesty International and news reports, cf. Baka v. INS, No. 91-9533, 1992 WL 97355, at * 2 (10th Cir. May 13, 1992) (BIA may take 'official notice' of current events bearing on an applicant's well-founded fear of persecution), detailing conditions in Ghana, Administrative R. at 53-54, but held these insufficient to show persecution.
 
 
 12
 The record contains substantial evidence to support the BIA's determination. Opoku's assertion that the current dictatorship, even though not the same as when he left, has the same motives and ideas, does not show that the current government will persecute him. The BIA correctly denied Opoku's application for asylum.
 
 
 13
 The Attorney General must withhold deportation if he determines that an alien's life or freedom would be threatened on account of race, religion, nationality, membership in a particular social group, or political opinion if he were to be deported. 8 U.S.C. § 1253(h). To be eligible for withholding of deportation, the alien must demonstrate " 'a clear probability of persecution' " with " 'objective evidence that it is more likely than not that he or she will be subject to persecution upon deportation.' " Kapcia, 944 F.2d at 709 (quoting Cardoza-Fonseca, 480 U.S. at 430).
 
 
 14
 Because Opoku did "not establish a well-founded fear of persecution, it follows that [he] also failed to establish the tougher standard of clear probability of persecution required for withholding of deportation." Kapcia, 944 F.2d at 709.
 
 
 15
 Opoku argues that the BIA erred in denying his application for suspension of deportation. Pursuant to 8 U.S.C. § 1254(a)(1), the Attorney General, in his discretion, may suspend the deportation of a deportable alien if (1) he has been physically and continuously present in the United States for at least seven years, (2) he proves he is a person of good moral character, and (3) deportation would cause extreme hardship to the alien or his family. See INS v. Jong Ha Wang, 450 U.S. 139, 140 (1981).
 
 
 16
 "[A]n alien who applies for suspension of deportation has the burden of proving both statutory eligibility for relief and the equities for a favorable exercise of discretion." Rivera-Zurita v. INS, 946 F.2d 118, 120 (10th Cir.1991). The BIA's "factual finding that an alien is not statutorily eligible for [suspension of deportation] is reviewed for substantial evidence." Id. We review the BIA's denial of suspension of deportation for abuse of discretion. Id.
 
 
 17
 The BIA held that while Opoku met the first two statutory requirements, he did not meet the "extreme hardship" requirement. "The attorney general is empowered to construe 'extreme hardship' narrowly." Michelson v. INS, 897 F.2d 465, 469 (10th Cir.1990) (citing Jong Ha Wang, 450 U.S. at 145). The record provides substantial evidence to support the BIA's holding that:
 
 
 18
 [t]he respondent came to the United States as an adult. The respondent has not worked regularly here but has been in school. He has no family ties in the United States. The respondent has siblings in Ghana. There is no evidence that the respondent could not get employment in Ghana or that the difficulty adjusting after his absence would be extreme. Social, political and economic conditions in the country to which he returns, while not ideal, do not constitute an extreme hardship.
 
 
 19
 Administrative R. at 51. The BIA did not abuse its discretion in denying suspension of deportation.
 
 
 20
 Opoku argues the BIA erred in denying his motion to reopen. We review this decision for an abuse of discretion. INS v. Abudu, 485 U.S. 94, 96 (1988). The BIA may deny a motion to reopen on three independent grounds: (1) the movant has not established a prima facie case for the relief sought; (2) the movant has not introduced previously unavailable evidence; or (3) even if the other two factors are met, the movant is not entitled to the discretionary grant of relief. Id. at 104-05.
 
 
 21
 Opoku argues he was disadvantaged before the IJ by his inability to find an attorney until shortly before the hearing. Thus, he could not produce the evidence now available regarding conditions currently existing in Ghana. He argues that this evidence proves he has a well-founded fear of prosecution.
 
 
 22
 The BIA denied the motion holding that the "new materials submitted are not sufficiently probative to require a remand for their consideration. The respondent has not shown that his beliefs or writings are known to the present Ghanian government, or that he would be perceived as a threat to that government after such a long time." Administrative R. at 54. This determination is not an abuse of discretion.
 
 
 23
 Opoku argues that the IJ erroneously held he had been granted asylum in Germany. Opoku fled to Germany initially where he filed for political asylum. Before a final decision was made on his application, however, Opoku obtained a student visa for the United States. The IJ's holding that he had been granted asylum in Germany was not one upon which the BIA based its decision. Further, the BIA correctly noted Opoku's status. See id. at 52.
 
 
 24
 The judgment of the Board of Immigration Appeals is AFFIRMED.
 
 
 
 *
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3