**Mohammed KHALAF, Petitioner,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

No. 89–2031.

United States Court of Appeals,
First Circuit.

Heard May 8, 1990.
Decided July 23, 1990.

**590**

Fred Hewitt Smith, for petitioner.

Jill E. Zengler, Office of Immigration Litigation, Civ. Div., Dept. of Justice, with whom Stuart M. Gerson, Asst. Atty. Gen., Civ. Div., and Robert Kendall, Jr., Asst. Director, were on brief for respondent.

Before BREYER, Chief Judge, CYR, Circuit Judge, and PETTINE,* Senior District Judge.

PETTINE, Senior District Judge.

The issue raised in this case is whether substantial evidence supports the Board of Immigration Appeals' ruling that petitioner Mohammed Khalaf does not have a "well-founded fear" that he will be persecuted on account of his "race, religion, nationality, membership in a particular social group, or

political opinion" if deported to Jordan. 8 U.S.C. § 1101(a)(42) (defining refugee); *see* 8 U.S.C. § 1158(a) (giving discretion to Attorney General to grant asylum to refugees). Khalaf appeals from the Board's determination that his likely imprisonment in Jordan for failure to fulfill his military obligation does not amount to persecution; further, Khalaf challenges the Board's ruling because it did not specifically address Khalaf's claim to fear persecution if returned to Jordan because the father of his wife is Jewish. Because we find that the Board's determination is supported by substantial evidence, we do not reach the other issue raised in this appeal.[1]

## I.

The petitioner is a Palestinian and Moslem who was born and raised in Lebanon. At sixteen, he and his family fled the warfare in Lebanon and settled in Jordan. Khalaf attended high school in Jordan for two years before coming to the United States at age eighteen. He entered the United States in 1978 as a non-immigrant student. After his marriage to a United States citizen, Khalaf's status was adjusted in 1982 to that of lawful permanent resident. In August 1984 the petitioner was convicted of conspiracy to possess with intent to distribute cocaine and of possession with intent to distribute cocaine. He was fined one thousand dollars and given a two-year suspended sentence. In Novem-

---

\* Of the District of Rhode Island, sitting by designation.

1. Khalaf's petition for asylum under 8 U.S.C. § 1158 was also treated as an application for withholding of deportation under 8 U.S.C. § 1253(h). In order to qualify for the withholding of deportation, a petitioner must demonstrate that it is "more likely than not," *INS v. Stevic,* 467 U.S. 407, 423 n. 18, 104 S.Ct. 2489, 2497 n. 18, 81 L.Ed.2d 321 (1984), that "the alien's life or freedom would be threatened ... on account of race, religion, nationality, membership in a particular social group, or political opinion." Khalaf challenges the interpretation given by the immigration judge to a section that limits the scope of withholding of deportation. *See* 8 U.S.C. § 1253(h)(2)(B) (withholding of deportation "shall not apply to any alien if the Attorney General determines that ... the alien, having been convicted by a final judgment of a particularly serious crime, constitutes a danger

to the community of the United States"). The immigration judge ruled that because Khalaf was convicted of a crime that was particularly serious, he was not eligible for withholding of deportation. According to Khalaf, the statute does not make anyone convicted of a serious crime automatically ineligible for withholding of deportation; if a petitioner is convicted of a serious crime, the immigration judge must then determine if that petitioner is a danger to the community. Because we uphold the Board's determination that Khalaf has not met the requirement of having a "well-founded fear of persecution," *a fortiori* he has not met the higher standard of proof required for the withholding of deportation, that it be more likely than not that he will suffer persecution if returned to Jordan. Thus, we do not determine the significance of the phrase "constitutes a danger to the community."

ber of that year the Immigration and Naturalization Service issued an Order to Show Cause charging that Khalaf was deportable because he had been convicted of a violation of a law relating to a controlled substance. *See* 8 U.S.C. § 1251(a)(11). Petitioner admitted that the allegations in the Order were accurate, but he denied his deportability. He then filed an application for political asylum.

In supporting his petition for asylum, Khalaf testified on his own behalf and submitted documentary evidence.[2] After reviewing all the evidence presented to him, the immigration judge ruled that imprisonment for failure to fulfill a military obligation constitutes prosecution, not persecution. The judge did not comment on the petitioner's statement in his asylum petition that "Jordanians, who are primarily Moslem, would look unfavorably at [his] marriage" to a woman whose mother and father are Christian and Jewish, respectively. The Board affirmed the immigration judge's ruling; it did not make reference to any threat of persecution on account of the ancestry of Khalaf's wife.

## II.

■ When reviewing a decision of the Board of Immigration Appeals[3] denying asylum under 8 U.S.C. § 1158(a), we apply the substantial evidence test. *Novoa–Umania v. INS*, 896 F.2d 1, 2 (1st Cir. 1990). Under this deferential standard, we may not reverse the Board simply because we disagree with its evaluation of the evidence; if the Board's conclusion is substantially reasonable, we must affirm it. *Diaz–Escobar v. INS*, 782 F.2d 1488, 1493 (9th Cir.1986).

■ In order to establish his eligibility for asylum, Khalaf needs to show that he has a well-founded fear of persecution because of his race, religion, nationality, membership in a particular social group, or

political opinion. 8 U.S.C. § 1101(a)(42)(A). Although neither this Circuit nor the Supreme Court has "set forth a detailed description of how the well-founded fear test should be applied," *INS v. Cardoza–Fonseca*, 480 U.S. 421, 448, 107 S.Ct. 1207, 1222, 94 L.Ed.2d 434 (1987), some guidelines are firmly established. First, the "well-founded fear" test is more generous to the asylum petitioner than the "clear probability" test a petitioner must meet to have deportation withheld. *See id.* at 449, 107 S.Ct. at 1222. The petitioner does not have to prove that it is more likely than not that he will be persecuted if deported. Instead, the petitioner must show that his fear is genuine and reasonable. *See Novoa–Umania*, 896 F.2d at 3; *Canas–Segovia v. INS*, 902 F.2d 717 (9th Cir.1990). A petitioner can satisfy this standard through his own testimony if it is "credible, persuasive, and refers to '*specific* facts that give rise to an inference that the applicant has been or has a good reason to fear that he or she will be singled out for persecution on one of the specified grounds.'" *Cardoza–Fonseca v. INS*, 767 F.2d 1448, 1453 (9th Cir.1985) (*quoting Carvajal–Munoz v. INS*, 743 F.2d 562, 574 (7th Cir.1984)), *aff'd*, 480 U.S. 421, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987) (emphasis in original).

## III.

There is substantial evidence to support the Board's determination that Khalaf did not establish a "well-founded fear" of persecution based on either of the grounds raised in the appeal.

■ In his first argument, Khalaf attempts to avoid the well-settled rule that punishment for failure to comply with a country's compulsory military service is prosecution, not persecution, *Umanzor–Alvarado v. INS*, 896 F.2d 14, 15 (1st Cir. 1990), by arguing that his "minimal" asso-

---

**2.** Before the immigration judge and the Board, Khalaf argued that his participation in the Baath Party and his uncle's and cousins' involvement with the Palestine Liberation Organization would result in his persecution if he was deported to Jordan. These issues are not raised in this appeal.

**3.** If the Board's decision is correct, any error made by the immigration judge is harmless. *Rodriguez–Rivera v. U.S. Dep't of Immigration and Naturalization*, 848 F.2d 998, 1003 (9th Cir. 1988).

ciation with Jordan makes such a punishment persecution. The petitioner's arguments are vitiated by his own admissions. He testified that he and his family were offered a safe harbor by Jordan when they fled Lebanon, that he attended school in Jordan, that he is a citizen of Jordan, and that the Jordanian government gave him a passport. He also makes no claim that he will be singled out for punishment; he even provided the immigration court with a copy of Jordanian laws that show he will be punished under established laws. Khalaf may disagree politically with the Jordanian government and may wish he had citizenship elsewhere, but he has taken advantage of Jordanian citizenship and for that Jordan can surely expect him to fulfill their citizenship requirements without interference from this court. To weigh the quality or quantity of Khalaf's contacts with Jordan into our consideration[4] would be to assume that the duties of citizenship are dependent on such things as the length of time one has been a citizen. Such an assumption nullifies the concept of a citizen as "a member of a free or jural society, ... possessing all the rights and privileges which can be enjoyed by any person under its constitution and government, and subject to the corresponding duties." Black's Law Dictionary 310 (rev. 4th ed. 1968). The Board certainly did not err if it did not weigh Khalaf's contacts when determining that any punishment for failure to fulfill military obligations would be prosecution. *Cf. Banco Nacional de Cuba v. Sabbatino,* 376 U.S. 398, 401, 84 S.Ct. 923, 926, 11 L.Ed.2d 804 (1964) ("The act of state doctrine in its traditional formula precludes the courts of this country from inquiring into the validity of the public acts of a recognized foreign sovereign power committed within its own territory.").

In his other argument, Khalaf contends that the immigration judge and the Board erred in not considering his claim that he would be persecuted because of his marriage to an American of Jewish–Christian ancestry. However, there was nothing for either the immigration judge or the Board to consider. Khalaf's concern about the consequences in Jordan of his marriage was mentioned only in passing on his application for asylum[5] and in his appeal brief before the Board.[6] There was no evidence, oral or documentary, presented concerning this fear. The petitioner asks us now to take judicial notice that Jordan is a "militantly" Moslem country and that there have been kidnappings and killings of foreigners "in that area of the world." First, these are arguments and evidence that were not made to the immigration judge and Board; issues not raised before the Board cannot be raised on appeal from that tribunal. *See Florez–De Solis v. INS,* 796 F.2d 330, 335 (9th Cir.1986). Further, even if we did take judicial notice of these "facts," they are insufficient to establish a well-founded fear of persecution. They are generalized statements that cannot by themselves support a well-founded fear of

**4.** Khalaf urges us to weigh his "minimal" contacts with Jordan in light of the decision in *Sovich v. Esperdy,* 319 F.2d 21 (2d Cir.1963), when determining whether his punishment amounts to prosecution or persecution. In that opinion, the Second Circuit held that the Attorney General had erred when he ruled that imprisonment for illegal departure from a foreign country may never be persecution within the purview of the immigration laws. The holding in that opinion was motivated by the court's concern for those attempting to escape systems of government that imposed harsh cruelties on their citizens ("The memory of Hitler's atrocities and of the legal system which he corrupted to serve his purposes, however, are still too fresh for us to suppose that physical persecution may not bear the *nihil obstat* of a 'recognized juridical system.'" *Id.* at 28, 29.). There has been no indication that any punishment that Khalaf might receive would be excessive or cruel, or that the government of Jordan is a "cruel dictatorship." *Id.* at 29.

**5.** On his asylum application Khalaf said, "My wife's mother and father are Christian and Jewish respectively. Jordanians, who are primarily Moslem, would look unfavorably at our marriage." This concern was mentioned only in response to a request for "additional information." In supplementary questions to the asylum application, Khalaf did mention this again, with no elaboration.

**6.** In this brief, Khalaf repeated his asylum application statement that marriages between Moslems and non-Moslems are looked upon with disfavor in Jordan. Again, there was no expansion on this statement.

persecution. *See Kaveh–Haghigy v. INS,* 783 F.2d 1321, 1323 (9th Cir.1986) (petitioner's concern about hatred of Americans fails because notably unspecific); *Rodriguez–Rivera,* 848 F.2d at 1006 (knowledge of random violence does not substantiate claim of persecution); *Bolanos–Hernandez v. INS,* 749 F.2d 1316, 1323 (9th Cir.1984) (important that general evidence of conditions that merely raised a possibility that petitioner would be subject to terror was coupled with evidence of specific threat to petitioner's life). Khalaf offers no evidence that the government, or any other group in Jordan, has persecuted those married to persons of Jewish or Christian ancestry or even those of Jewish or Christian ancestry themselves. These new "facts" lack the specificity required for the establishment of a well-founded fear of persecution.

The petition is

*Denied.*