108 F.3d 1376
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Athir Nasir ELIAS and Zina I. Murad, Petitioners,
v.
IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 No. 96-3338.
 United States Court of Appeals, Sixth Circuit.
 March 20, 1997.
 
 Petition for Review of an Order of the Board of Immigration Appeals, Nos. Avs-jah-kmi, Aet-amw-sjh.
 BIA
 REVIEW DENIED.
 Before: JONES, SUHRHEINRICH, and SILER, Circuit Judges.
 PER CURIAM.
 
 
 1
 Petitioners, Athir Elias and his wife, Zina Murad, citizens of Iraq, seek review of the denial of their application for asylum or for withholding of deportation. Because we conclude that the Board of Immigration Appeals' (BIA's) decision to deny the application is substantially reasonable, we deny the petition for review.
 
 I. BACKGROUND
 
 2
 Elias, his wife, and their infant child entered the United States without inspection in 1992. They concede that they are deportable on that basis, but seek asylum or withholding of deportation.[1] In a statement accompanying his application, Elias explains that in Iraq his father had refused to join the Baath Party, but rather joined the opposition. Elias states that his father was taken off to an Iraqi jail for three months. When he returned home, Elias' father was mentally and physically ill due to mistreatment he received while in prison. He died two months after his release.
 
 
 3
 Elias recounts that his older brother, who also refused to join the Baath Party, was taken from college, conscripted into the Iraqi army, and, without training, was sent to the front lines of war. Two months later, his body was thrown in front of the Eliases' home with a gunshot wound in the back.
 
 
 4
 Elias states that government officials would periodically question him, particularly about his sister who lived in the United States. He resisted the government's requests that he join the Baath Party. After his graduation from college, he was conscripted into the army, where he continued to be questioned. When the Gulf War began, Elias deserted the army, but returned a few months later after hearing that all deserters would be granted amnesty. The Iraqi police interrogated him for three days. He claims the police slapped and punched him and only fed him one small meal a day. Once he was released, he obtained a passport through use of a bribe, and he and his wife left Iraq. After traveling through several countries, the Eliases arrived in the United States, where they have been living with Elias' sister in Michigan.
 
 
 5
 At a hearing before the immigration judge (IJ), Elias testified that he did not know who had taken his father to jail. His father never spoke of why he had been imprisoned, and Elias did not know what had caused the illness from which his father suffered when he returned from prison. He likewise did not know who had interrogated his brother, but indicated that he thought it was "the security." He stated that his brother did not participate in any political activities while he was at the university prior to his forced conscription. The IJ found that Elias had failed to satisfy his burdens of proof and persuasion in his application for asylum.
 
 
 6
 Accordingly, the IJ denied the application for asylum or withholding of deportation and granted voluntary deportation. The BIA dismissed Elias' appeal from the IJ's decision.
 
 II. DISCUSSION
 
 7
 We must apply the substantial evidence standard of review to the BIA's decision regarding an alien's eligibility for asylum and/or withholding of deportation. The substantial evidence standard merely requires that the BIA's decision, based on the evidence, be substantially reasonable. Klawitter v. INS, 970 F.2d 149, 151 (6th Cir.1992). The BIA's decision cannot be reversed unless Elias shows that the evidence he presented compels the conclusion that the requisite fear of persecution existed. INS v. Elias-Zacarias, 502 U.S. 478, 481 (1982).
 
 
 8
 The Immigration and Nationality Act provides two methods through which an otherwise deportable alien may seek relief: 8 U.S.C. § 1158(a) authorizes the Attorney General, in her discretion, to grant asylum to an alien who does not wish to return to his home country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion," 8 U.S.C. § 1101(a)(42); 8 U.S.C. § 1253(h) requires the Attorney General to withhold deportation of an alien who demonstrates a clear probability that his "life or freedom would be threatened" on account of one of the five factors listed above if he is deported. The asylum "well-founded fear of persecution" standard is broader and can be satisfied more easily than the withholding of deportation "clear probability of persecution" standard. Gumbol v. INS, 815 F.2d 406, 412 (6th Cir.1987).
 
 A. Asylum
 
 9
 "Well-founded fear of persecution" turns on the subjective mental state of the alien, but it must also be supported by some specific, objective facts that render the subjective fear reasonable. Rodriguez-Rivera v. INS, 848 F.2d 998, 1002 (9th Cir.1992). "Absent documentary evidence, an asylum applicant's testimony regarding a claim of past persecution will suffice only if it is credible, persuasive, and refers to specific facts that give rise to an inference that the applicant has been singled out for persecution on account of a qualifying ground...." Klawitter, 970 F.2d at 154 (internal citations omitted).
 
 
 10
 An applicant for asylum must establish that his fear of persecution stems directly from one of the five factors listed in the Act (race, religion, nationality, membership in a particular social group, or political beliefs). Although Elias does not specifically assert the ground for his fear of persecution, it is assumed that he claims fear of persecution on account of political beliefs. While Elias claims in his statement accompanying his application that his father's and his brother's persecution arose out of their refusals to join the Baath Party, he stated in the hearing before the IJ that he did not know who took his father to jail or why his father had previously gone into hiding. He could only surmise that the Iraqi government imprisoned his father for his refusal to join the Baath Party.
 
 
 11
 Likewise, he does not know who interrogated his brother. The mere fact that the government conscripted his brother into the army does not establish persecution. Nor does the government's conscription of Elias into the army establish persecution. In Alonzo v. INS, 915 F.2d 546, 548 (9th Cir.1990), the Ninth Circuit held:
 
 
 12
 A government's conscription efforts do not constitute persecution on account of political or religious beliefs except in those rare cases where a disproportionately severe punishment would result on account of those political or religious beliefs.... [I]n order for persecution to constitute disproportionately severe punishment on account of religious or political beliefs ..., the alien must demonstrate that the government knew of his political or religious beliefs and attempted to conscript him despite those beliefs.
 
 
 13
 Elias does not assert that he told the government that he had a political objection to serving the army, and his refusal to join the Baath Party does not necessarily translate into a refusal to serve in the country's army on the grounds of political opinion.
 
 
 14
 Elias refers to his three-day interrogation after his desertion from the army as evidence of persecution. He further asserts that he fears he will be punished for desertion if he returns to Iraq. However, it is well-settled that "punishment for failure to comply with a country's compulsory military service is prosecution, not persecution." Khalaf v. INS, 909 F.2d 589, 591 (1st Cir.1990).
 
 
 15
 Elias claims that he cannot be expected to provide direct evidence of his persecutors' motives because the government is not likely to admit that it is guilty of persecution. Direct evidence is not required,
 
 
 16
 [b]ut since the statute makes motive critical, he must provide some evidence of it, direct or circumstantial. And if he seeks to obtain judicial reversal of the BIA's determination, he must show that the evidence he presented was so compelling that no reasonable factfinder could fail to find the requisite fear of persecution.
 
 
 17
 Elias-Zacarias, 502 U.S. at 483-84. However, Elias has not carried this burden. In conclusion, there are no specific, credible facts showing that the Iraqi government persecuted Elias, his brother, or his father on account of their political opinions. Elias' testimony is inconclusive. Therefore, the BIA was justified in denying Elias' appeal.
 
 B. Withholding of Deportation
 
 18
 Applying the clear probability standard of § 1253(h), we must determine "whether it is more likely than not that the alien would be subject to persecution." INS v. Stevic, 467 U.S. 407, 424 (1984). Because this is a more stringent standard than the well-founded fear requirement, the failure to establish eligibility for asylum obviates the need to consider the withholding issue. See Huaman-Cornelio v. Board of Immigration Appeals, 979 F.2d 995, 1000 (4th Cir.1992).
 
 III. CONCLUSION
 
 19
 The petition for review of the BIA's decision is DENIED.
 
 
 
 [1]
 Murad's application for asylum is predicated on her husband's claim. Their requests for asylum include a request for one of their two children. Under 8 U.S.C. § 1158(c), asylum may be granted to the wife or child of an alien who has been granted asylum. The second child, having been born in the United States, is not a subject of the deportation proceedings