**Jan KAPCIA, Petitioner,**

v.

**IMMIGRATION & NATURALIZATION SERVICE, Respondent.**

**Stanislaw SAULO, Petitioner,**

v.

**IMMIGRATION & NATURALIZATION SERVICE, Respondent.**

**Nos. 90–9533 to 90–9534.***

United States Court of Appeals, Tenth Circuit.

Sept. 9, 1991.

---

* The parties in case no. 90–9434 waived oral argument. The cause is therefore submitted without oral argument. *See* Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9.

Timothy C. Kingston of Holland & Hart, Denver, Colo. (Daniel W. Patterson and A.

Bruce Jones of Holland & Hart, Denver, Colo., and Thomas R. Orr of Holland & Hart, Colorado Springs, Colo., with him on the briefs), for petitioner, Kapcia.

Mary Maywalt, Law Office of Mary Maywalt, P.C., Boulder, Colo., and Star L. Waring, Denver, Colo., on the briefs for petitioner, Saulo.

Charles E. Pazar, Office of Immigration Litigation, U.S. Dept. of Justice, Washington, D.C. (Stuart M. Gerson, Asst. Atty. Gen., Robert Kendall, Jr., Asst. Director, and Linda S. Wendtland, Office of Immigration Litigation, Civ. Div., Dept. of Justice, Washington, D.C., with him on the briefs), for respondent.

Before ANDERSON, BALDOCK and EBEL, Circuit Judges.

STEPHEN H. ANDERSON, Circuit Judge.

Petitioners Jan Kapcia and Stanislaw Saulo are Polish citizens who appeal from decisions of the Board of Immigration Appeals (Board) that upheld two immigration judges' orders finding petitioners deportable and denying their applications for asylum and withholding of deportation pursuant to sections 208(a) and 243(h) of the Immigration and Nationality Act (Act), respectively, 8 U.S.C. §§ 1158(a) and 1253(h); and granted them voluntary departure under section 244(e) of the Act, 8 U.S.C. § 1254(e). "Our jurisdiction to review the [B]oard's order arises under 8 U.S.C. § 1105a(a) and 28 U.S.C. [§] 158 pertaining to review of orders of federal agencies. Our review is limited to the administrative record forming the basis for the deportation order. 8 U.S.C. § 1105a(a)(4)." *Michelson v. I.N.S.*, 897 F.2d 465, 467 (10th Cir.1990) (citing *Vassiliou v. District Dir. I.N.S.*, 461 F.2d 1193, 1195 (10th Cir.1972)). We affirm.

FACTUAL BACKGROUND

Petitioners claim that because of past and future persecution arising from their membership and participation in Solidarity they are eligible for asylum and are not deportable to Poland. Following deporta-tion proceedings before immigration judges, petitioners were ordered to voluntarily depart. The Board affirmed the immigration judges' orders because it found that the petitioners had failed to establish either a "well-founded fear" of persecution or a claim of past persecution sufficient to merit a grant of asylum relief. The Board found that because the petitioners failed to satisfy the lower burden of proof required for asylum, they also failed to satisfy the "clear probability standard of eligibility required for withholding of deportation."

*Jan Kapcia*

Kapcia's asylum application and testimony indicates that he joined Solidarity in March 1981. He still considers himself a member of Solidarity. He distributed anti-government, pro-Solidarity materials during the period that Solidarity was outlawed. From December 1985 through 1988, Kapcia alleges that he was arrested four times, detained three times, and beaten once. In addition, his house was searched, and he was treated adversely at work. Nonetheless, he continued to distribute Solidarity materials until the time of the free elections on June 4, 1989. On August 15, 1989, he arrived in Anchorage, Alaska on a charter flight to join a Polish fishing vessel. He worked for a Polish state-run fishing company, "GRYF." He was admitted to the United States under a transit visa. After deportation proceedings began, he applied for asylum.

*Stanislaw Saulo*

Saulo's asylum application and testimony indicates that he joined Solidarity in 1982. He distributed leaflets and slogans. He alleges that twice since 1983 he was detained for a two-day period during which time he was interrogated and beaten. Upon release he was warned not to continue his Solidarity activities. He also alleges that as a result of his activities, his parents' home was searched, he was assigned poor work tasks and denied bonuses, his locker was broken into many times, and he was conscripted into the Polish army where he was constantly harassed. Finally, he was fired from his job. Saulo also alleges that later, in 1986, he joined Fighting Sol-

idarity, a group he claims is still illegal in Poland. Subsequent to distributing its illegal literature, he was detained for several hours and beaten. After the free elections in Poland, he was convicted of distributing illegal pamphlets and fined. On August 15, 1989, Saulo arrived in Anchorage, Alaska to join a Polish fishing vessel. He was also admitted to the United States on a transit visa. He then asked for political asylum.

Both petitioners raise the following claims on appeal. First, they argue that the Board erred when it took administrative notice of the political changes in Poland. Second, they argue that the Board's decisions denying them asylum or withholding of deportation are not supported by substantial evidence. Separately, Kapcia also argues that the Board erred by failing to grant asylum to him after he showed he had suffered past persecution. Finally, Saulo also argues that the Board erred by applying the statutory standard for withholding of deportation to his asylum claim.

## I. *Administrative Notice*

■ We review *de novo* any of the Board's legal interpretations. *Desir v. Ilchert*, 840 F.2d 723, 726 (9th Cir.1988) (citing *Lazo–Majano v. I.N.S.*, 813 F.2d 1432, 1434 (9th Cir.1987)). In both proceedings, relying on its earlier decision in *Matter of Chen*, Interim Decision 3104 (BIA 1989), the Board took administrative notice of the fact that on September 10, 1989, Solidarity became a part of the Polish coalition government. The Board then inferred that "there no longer exists any basis for the [petitioners'] claim[s] that [they have] a 'well-founded fear' of persecution by the Polish government due to [their] activities on behalf of Solidarity."

■ An agency such as the Board may take "official notice" of "commonly acknowledged facts, [and] ... technical or scientific facts that are within the agency's area of expertise." *McLeod v. I.N.S.*, 802 F.2d 89, 93 n. 4 (3d Cir.1986). As the Seventh Circuit recently stated:

In exercising official notice, administrative agencies may consider commonly acknowledged facts. *See generally*, 3 K. Davis, *Administrative Law Treatise* § 15 (1980). The Board's notice of current events bearing on an applicant's well-founded fear of persecution—in this case Solidarity's participation in the Polish government—falls within this accepted category.

*Kaczmarczyk v. I.N.S.*, 933 F.2d 588, 593–94 (7th Cir.1991) (citing *McLeod v. I.N.S.*, 802 F.2d at 93 n. 4 and *Zamora v. I.N.S.*, 534 F.2d 1055, 1062 (2d Cir.1976)). Furthermore, the Board may draw reasonable inferences from the evidence which "comport with common sense." *Kaczmarczyk v. I.N.S.*, 933 F.2d at 594; *see also N.L.R.B. v. Milk Drivers & Dairy Employees*, 531 F.2d 1162, 1165 (2d Cir.1976). We agree with the Seventh Circuit that now that Solidarity is a part of the Polish coalition government, the Board properly took notice of this fact and reasonably inferred that, generally speaking, Solidarity members will not be persecuted. *Kubon v. I.N.S.*, 913 F.2d 386, 388 (7th Cir.1990); *see also Kaczmarczyk v. I.N.S.*, 933 F.2d at 594 ("it was reasonable for the Board to conclude that Poland's changed political circumstances substantially diminished the likelihood that the Polish government would persecute Solidarity members and activists").

■ Petitioners also argue that they did not have an opportunity to rebut the inferences drawn from the administrative notice. On the contrary, petitioners had ample opportunity to address those issues. Although the Administrative Procedure Act does not apply to INS proceedings, *Marcello v. Bonds*, 349 U.S. 302, 307, 75 S.Ct. 757, 760, 99 L.Ed. 1107 (1955), *reh'g denied*, 350 U.S. 856, 76 S.Ct. 38, 100 L.Ed. 761 (1955), petitioners in deportation proceedings must be "afforded a full and fair hearing that comports with due process." *Vissian v. I.N.S.*, 548 F.2d 325, 329 (10th Cir.1977) (quoting *Pilapil v. I.N.S.*, 424 F.2d 6, 9 (10th Cir.), *cert. denied*, 400 U.S. 908, 91 S.Ct. 152, 27 L.Ed.2d 147 (1970)); *see also Mathews v. Eldridge*, 424 U.S. 319, 348, 96 S.Ct. 893, 909, 47 L.Ed.2d 18 (1976). The record reveals petitioners enjoyed a

fair hearing on this issue. Administrative notice of the changed conditions in Poland was first taken during the deportation hearings before the immigration judges. Petitioners' efforts at these earlier hearings were mainly aimed at the contention that despite the new coalition government, they still faced persecution if returned to Poland. Both presented extensive expert witness testimony to that end. Consequently, petitioners were well aware of that issue prior to their appeal hearings before the Board. Indeed, on appeal before the Board, Kapcia argued that during his hearing before the immigration judge, "his own testimony and that of his expert witness ... established that conditions in Poland have not changed sufficiently to protect [him] if he were sent back to Poland." [1]

In sum, the Board properly took administrative notice of the changed political situation in Poland and reasonably inferred that the new coalition government would not persecute members of Solidarity. Furthermore, petitioners had a full and fair opportunity to rebut this inference.

## II. *Asylum and Withholding of Deportation*

The Immigration and Nationality Act "provide[s] two methods through which an otherwise deportable alien who claims that he will be persecuted if deported can seek relief." *I.N.S. v. Cardoza–Fonseca*, 480 U.S. 421, 423, 107 S.Ct. 1207, 1208–09, 94 L.Ed.2d 434 (1987). These are 1) asylum, and 2) withholding of deportation. Petitioners applied for, and were denied, both forms of relief. We review each in turn.

### A. *Asylum.*

The Immigration and Nationality Act of 1952 was amended by the Refugee Act of 1980 to require the Attorney General to establish a procedure to grant refugee asylum "for an alien physically present in the United States or at a land border or port of entry irrespective of such alien's status." 8 U.S.C. § 1158(a). "[I]f the Attorney General determines that such alien is a refugee within the meaning of section 1101(a)(42)(A)," then the "alien may be granted asylum in the discretion of the Attorney General." *Id.* Therefore, a grant of asylum requires two steps. *Rodriguez–Rivera v. U.S. I.N.S.*, 848 F.2d 998, 1001 (9th Cir.1988).

1. In the first step, the alien must prove that he or she is statutorily eligible for asylum by establishing that he or she is a refugee. To establish refugee status, the alien must prove either past "persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42).

The Supreme Court has declined to further develop the well-founded fear test for asylum. *I.N.S. v. Cardoza–Fonseca*, 480 U.S. at 448–49, 107 S.Ct. at 1222.[2] The Court expects the term "'well-founded fear' ... [to] be given concrete meaning through a process of case-by-case adjudication." *Id.* at 448, 107 S.Ct. at 1221. The Circuit Courts of Appeals, however, have interpreted the well-founded fear of persecution standard to require a subjective "fear" component and an objective "well-founded" component. *See, e.g., Desir v. Ilchert*, 840 F.2d 723, 726 (9th Cir.1988). The subjective component requires that the alien's fear is genuine. *Id.* This is not relevant, however, until the alien establishes the objective component. *De Valle v. I.N.S.*, 901 F.2d 787, 793 (9th Cir.1990). In the Ninth Circuit, "the objective component 'requires a showing, by credible, direct, and specific evidence in the record, of facts that would support a reasonable fear that the petitioner faces persecution.'" *Aguilera–*

---

1. In addition, as the INS notes, if the petitioners have additional evidence that they could not have known or discovered during the deportation proceedings, pursuant to 8 C.F.R. § 3.2, they may file a motion to re-open the proceedings.

2. The Court's only guidance is that "an alien need not prove [the tougher standard that is required for the other method of relief, withholding of deportation,] that it is more likely than not that he or she will be persecuted in [the] home country." *I.N.S. v. Cardoza–Fonseca*, 480 U.S. at 449, 107 S.Ct. at 1222.

*Cota v. U.S. I.N.S.*, 914 F.2d 1375, 1378 (9th Cir.1990) (quoting in part *Rodriguez–Rivera v. U.S. I.N.S.*, 848 F.2d at 1002); *see also Kubon v. I.N.S.*, 913 F.2d at 388 ("specific facts showing a 'good reason' to fear persecution"); *M.A. v. U.S. I.N.S.*, 899 F.2d 304, 311 (4th Cir.1990) (reasonable person in same circumstances would fear persecution); *accord, Campos–Guardado v. I.N.S.*, 809 F.2d 285, 290 (5th Cir.), *cert. denied*, 484 U.S. 826, 108 S.Ct. 92, 98 L.Ed.2d 53 (1987).

▆▆▆ We review the Board's factual findings of whether an alien is a refugee under the substantial evidence standard. *Desir v. Ilchert*, 840 F.2d at 726 (citations omitted). The alien bears the burden of proof in the deportation proceedings. 8 C.F.R. § 208.5 and § 242.17(c); *Diaz–Escobar v. I.N.S.*, 782 F.2d 1488, 1493 (9th Cir. 1986). The asylum applicant "must present 'specific facts' through objective evidence to prove either past persecution or 'good reason' to fear future persecution." *Aguilera–Cota v. U.S. I.N.S.*, 914 F.2d at 1378–79; *Carvajal–Munoz v. I.N.S.*, 743 F.2d 562, 574 (7th Cir.1984).[3] Under this standard, we do not "weigh the evidence or ... evaluate the witnesses' credibility." *Sorenson v. National Transp. Safety Bd.*, 684 F.2d 683, 685 (10th Cir.1982) (interpreting identical Administrative Procedures Act standard). Even if we disagree with the Board's conclusions, we will not reverse if they are supported by substantial evidence and are substantially reasonable. *Khalaf v. I.N.S.*, 909 F.2d 589, 591 (1st Cir.1990); *Diaz–Escobar v. I.N.S.*, 782 F.2d at 1493.

▆▆▆ Applying the correct standards to both asylum applications, the Board found that petitioners were not statutorily eligible for asylum because they did not meet their burden of establishing refugee status. The Board found no specific facts to establish *either* a well-founded fear of persecution or sufficient past persecution.[4] We find substantial evidence in the record to support these findings.

With respect to the petitioners' well-founded fear of persecution, as we stated, the Board correctly took administrative notice of the changed political conditions in Poland. Consequently, it found that neither petitioner presently could claim a well-founded fear of persecution. It found the expert witnesses' testimonies to the contrary were "speculative and conclusory in nature, and without more, ... insufficient to support" the asylum applications. The Board reiterated that it is the petitioner's burden to show statutory eligibility for asylum by specific facts. In Jan Kapcia's deportation proceeding, the Board noted that "[n]o examples have been provided of Poles who have similar backgrounds to the respondent and who have been persecuted subsequent to the change in government." (citing *I.N.S. v. Cardoza–Fonseca*, 480 U.S. 421, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987) and *I.N.S. v. Stevic*, 467 U.S. 407, 104 S.Ct. 2489, 81 L.Ed.2d 321 (1984)). Likewise, in Stanislaw Saulo's case, the Board found no specific evidence to indicate that Saulo would face persecution if returned to Poland. Concerning his involvement in fighting Solidarity, the Board pointed out that

3. In *Carvajal–Munoz v. I.N.S.*, 743 F.2d at 574 (footnote omitted), the Seventh Circuit stated: Ordinarily, this must be done through objective evidence supporting the applicant's contentions. Sometimes, however, the applicant's own testimony will be all that is available regarding past persecution or the reasonable possibility of persecution. [Then,] the applicant's uncorroborated testimony will be insufficient to meet the evidentiary burden unless it is credible, persuasive, and points to *specific* facts that give rise to an inference that the applicant has been or has a good reason to fear that he or she will be singled out for persecution.

4. We reject Saulo's argument that the Board applied the more stringent clear-probability of persecution test, used in the withholding of deportation analysis, to his asylum claim. When it examined whether the petitioner was a refugee and thus statutorily eligible for a discretionary grant of asylum, the Board correctly applied the tests for past persecution and well-founded fear of future persecution. Saulo cites the portion of the Board's order in which it explained its discretion to deny asylum even if past persecution were sufficient to make Saulo statutorily eligible for asylum. This is not error. Under the Board's discretionary authority it may deny asylum to a refugee if there is little likelihood of present persecution. *Matter of Chen*, Interim Decision 3104 (BIA 1989).

the conviction and fine for distribution of illegal material is a legitimate government act and not persecution as contemplated by the Act. Finally, the Board noted that potential job loss or "generalized economic disadvantage" is also not persecution under the Act.

In sum, neither petitioner provided the credible, direct, and specific evidence to support a reasonable fear or persecution that is necessary to establish the objective component of the well-founded fear test. Therefore, we need not examine the petitioners' subjective fears and find that substantial evidence supports the Board's conclusions that petitioners have no well-founded fear of persecution if returned to Poland.

With respect to the petitioners' past persecution claims, the Board found that neither petitioner had established severe enough past persecution to warrant refugee status. In *Kubon v. I.N.S.*, 913 F.2d at 388, the Seventh Circuit similarly found that "a brief confinement for political opposition to a totalitarian regime does not necessarily constitute persecution." (citing *Sovich v. Esperdy*, 319 F.2d 21, 29 (2d Cir.1963)). In *Desir v. Ilchert*, 840 F.2d at 729, the Ninth Circuit stated that "beatings, arrests, and assaults," would be enough to establish past persecution. In petitioners' cases, however, substantial evidence supports the Board's conclusions that neither petitioner's past persecution rose to that level.

▪▪▪▪ 2. In the second step of the asylum procedure, if an alien has established statutory eligibility as a refugee, the Attorney General will then apply his discretion to grant or deny asylum.[5] Even if we found that petitioners are statutorily eligible for asylum as refugees, we would nonetheless uphold the Board's decision to deny asylum on discretionary grounds. We re-

view this second step of the Board's discretionary grant or denial of asylum for abuse of discretion. *Kaczmarczyk v. I.N.S.*, 933 F.2d at 593. The Attorney General's discretion in the asylum procedure is extremely broad. "[W]e review whether the discretion was exercised and, if so, whether it was exercised in a non-arbitrary and non-capricious manner." *Michelson v. I.N.S.*, 897 F.2d at 468 (citations omitted). Our scope of review under the "arbitrary and capricious" standard is narrow. *Bowman Transp., Inc., v. Arkansas–Best Freight System, Inc.*, 419 U.S. 281, 285, 95 S.Ct. 438, 442, 42 L.Ed.2d 447 (1974). We consider

> whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment.... The court is not empowered to substitute its judgment for that of the agency. *Citizens to Preserve Overton Park v. Volpe*, [401 U.S. 402,] at 416 [91 S.Ct. 814, 824, 28 L.Ed.2d 136 (1971)]. The agency must articulate a "rational connection between the facts found and the choice made."

*Id.* (citations omitted).

Citing *Matter of Chen*, Interim Decision 3104 at n. 1, the Board found that even if it were to assume that petitioners suffered severe past persecution, "asylum relief may still be denied as a matter of discretion where there is little likelihood of present persecution," except when "the past persecution had been so severe that return to the country of persecution would be inhumane." In addition, asylum might be granted on humanitarian grounds, "such as if the alien no longer has any ties to the country, familial or otherwise." Finding little likelihood of present persecution and no other humanitarian reasons to grant asylum, however, the Board stated that *even if* the petitioners' past persecution were sufficiently severe, it would use its

---

5. In *I.N.S. v. Cardoza–Fonseca*, 480 U.S. at 428, n. 5, 107 S.Ct. at 1211, n. 5, the Court emphasized that "the Attorney General is *not required* to grant asylum to everyone who meets the definition of refugee. Instead, a finding that an alien is a refugee does no more than establish

that 'the alien *may* be granted asylum *in the discretion of the* Attorney General.'" In immigration proceedings, this discretion is broad. *Achacoso–Sanchez v. I.N.S.*, 779 F.2d 1260, 1264 (7th Cir.1985); *Osuchukwu v. I.N.S.*, 744 F.2d 1136, 1142 (5th Cir.1984).

discretion to deny asylum to them.[6]

Once an alien establishes sufficient past persecution to make him eligible for statutory relief, asylum may still be "denied as a matter of discretion if there is little likelihood of present persecution." *Matter of Chen*, Interim Decision 3104 (BIA 1989). After the alien established statutory eligibility, then, "a rebuttable presumption arises that" because of the past persecution, the alien "has reason to fear similar persecution in the future." *Id.* When this happens:

> the Service ordinarily will have to present, as a factor militating against the favorable exercise of discretion, evidence that there is little likelihood of present persecution, *or the immigration judge or this Board may take administrative notice of changed circumstances in appropriate cases, such as where the government from which the threat of persecution arises has been removed from power.*

*Matter of Chen*, Interim Decision 3104 (BIA 1989) (emphasis added). Because the Board properly took administrative notice of Poland's changed government, the presumption was rebutted and the INS was relieved of any burden to refute the likelihood of present persecution. Thereafter, Kapcia and Saulo speculated but did not offer evidence that they or others in similar circumstances would be persecuted *after* the coalition government was in place. That is insufficient. *McLeod v. I.N.S.*, 802 F.2d at 93. We cannot say that to deny asylum to the petitioners on this record would have been an abuse of discretion.[7]

### B. *Withholding of Deportation.*

Under the 1980 Act, with certain exceptions, the Attorney General has no discretion in a withholding of deportation proceeding. If the Attorney General "determines that [an] alien's life or freedom would be threatened in [his] country on account of race, religion, nationality, membership in a particular social group, or political opinion," he or she "shall not deport or return" the alien to that country. 8 U.S.C. § 1253(h). The alien must demonstrate a "clear probability of persecution" with "objective evidence that it is more likely than not that he or she will be subject to persecution upon deportation." *I.N.S. v. Cardoza–Fonseca*, 480 U.S. 421, 430, 107 S.Ct. 1207, 1212, 94 L.Ed.2d 434 (citing *I.N.S. v. Stevic*, 467 U.S. 407, 104 S.Ct. 2489, 81 L.Ed.2d 321 (1984) (footnote omitted)). The Court has held that this clear probability test and the well-founded fear test for the grant of asylum are not equivalent. *I.N.S. v. Cardoza–Fonseca*, 480 U.S. at 446, 107 S.Ct. at 1221. "[T]he well-founded-fear standard is more generous than the clear-probablity-of-persecution standard...." *I.N.S. v. Stevic*, 467 U.S. at 425, 104 S.Ct. at 2498.

Because substantial evidence supports the Board's findings that petitioners could not establish a well-founded fear of persecution, it follows that petitioners also failed to establish the tougher standard of clear probability of persecution required for withholding of deportation. *See, e.g., Kubon v. I.N.S.*, 913 F.2d at 388; *De Valle v. I.N.S.*, 901 F.2d at 793; *Sanchez–Trujillo v. I.N.S.*, 801 F.2d 1571, 1581 (9th Cir. 1986).

### CONCLUSION

In sum, the Board did not err when it took administrative notice of the changed political conditions in Poland or inferred that after those changes individuals in peti-

---

6. As we have stated, contrary to Kapcia's claim, the Board found that his claims of past persecution were not severe enough to "sufficient[ly] ... demonstrate statutory eligibility for asylum" as a refugee. Consequently, there is no basis for Kapcia's argument on appeal that the Board erred by failing to grant asylum to him after he showed he had suffered past persecution. Because he did not establish refugee status either on the basis of past persecution or a well-founded fear of future persecution, he was not eligible for the Attorney General's discretionary grant of asylum. The Board only hypothetically applied the discretionary phase of the asylum procedure to Kapcia's case.

7. In fact, pursuant to the recently amended 8 U.S.C. § 1158(b) the Attorney General now has the power to change a refugee's status if circumstances in the country change.

tioners' circumstances had no well-founded fear of persecution. The Board applied the correct evidentiary standards of proof and its factual findings that neither petitioner established statutory "refugee" eligibility for asylum either by establishing past persecution or a well-founded fear of future persecution or met the requirement for withholding of deportation are supported by substantial evidence. Finally, even if petitioners' past persecution had been severe enough to make them eligible for a discretionary grant of asylum, the Board would not have abused its discretion by denying asylum to petitioners because there is little likelihood of present persecution for either of them in Poland.

Therefore, we AFFIRM the Board's denial of asylum and withholding of deportation and order of voluntary departure.