19 F.3d 1443
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Hok Beng KHO, Julia Kosasih, Susi Lia Wati Kosasih, Lenna
Lasmana, and Aripin Kosasih, Petitioners,
v.
IMMIGRATION & NATURALIZATION SERVICE, Respondent.
 No. 93-9565.
 United States Court of Appeals, Tenth Circuit.
 March 15, 1994.
 
 Before MOORE, ANDERSON, and KELLY, Circuit Judges.
 
 ORDER AND JUDGMENT[1]
 
 1
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R.App. P. 34(a); 10th Cir. R. 34.1.9. The cause is therefore ordered submitted without oral argument.
 
 
 2
 The Kosasih family, consisting of Aripin Kosasih, his wife Lenna Lasmana, two daughters Susi Lia Wati Kosasih and Julia Kosasih, and son Hok Beng Kho, petition for review of Board of Immigration Appeals ("BIA") orders dismissing their appeals from decisions to deny them asylum under 8 U.S.C. 1158(a) and not to withhold deportation under 8 U.S.C. 1253(h). The family contend that the BIA's findings were not supported by substantial evidence, and that the BIA abused its discretion by failing to consider the record of their original two cases as a whole after the appeals were consolidated. We affirm.
 
 BACKGROUND
 
 3
 Mr. Kho entered the United States in July 1986 as a nonimmigrant visitor. A year later, Mr. Kosasih entered as a nonimmigrant visitor, followed in November 1987 by Mrs. Kosasih, and their two young daughters. Because they overstayed their visas, they were found deportable. Mr. Kho's case was separate from that of his parents and minor sisters, since he had entered first, and was an adult at the time. All family members are citizens of Indonesia, but ethnically Chinese. At the hearings, they sought political asylum based on their persecution by an Indonesian gang, the Buah Batu, whom they say the Indonesian government was unable or unwilling to control.
 
 
 4
 The record contains conflicting accounts of the initial persecution. Mr. Kosasih's request for asylum indicated that the persecution began with the beating of his son, Mr. Kho. R. at 223. At his later hearing, Mr. Kosasih testified that the family's problems actually began when he refused to give a statement about an army massacre which a former army colonel requested in order to profit from embarrassing the government. R. at 98-102. Following Kosasih's refusal, the colonel beat him, and forced him to sign over a country villa. R. at 102-03. Later, the colonel's son, a Buah Batu member, came to the family house to "borrow his car." R. at 125-26. Thereafter, the Buah Batu began to hang out at the Kosasih house, drinking and harassing family members. R. 104-05.
 
 
 5
 During the same period, when Mr. Kho was on the street after his motorcycle broke down, a passing car full of gang members stopped and beat him for "looking at them." R. at 204-05, 263-64. He reported the incident to the local police who arrested some of the assailants. However, upon learning they were sons of military officers, the police released them. R. at 205. After that, the Buah Batu increased its harassment. Another Kosasih son was kidnapped and tortured. R. at 108. Susi was beaten and fondled almost daily, and forced to witness the torture/murder of another Chinese girl. R. at 137-42. At the same time, the colonel's son professed a desire to marry Susi. R. at 105-06. When Mr. Kosasih complained, the police refused to take any action. R. at 108.
 
 DISCUSSION
 
 6
 In order to qualify for asylum, an applicant must demonstrate a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion. 8 U.S.C. 1158,1101(a)(42). The alien has the burden of proof in deportation hearings. 8 C.F.R. 242.17(c)(4)(iii).
 
 
 7
 We have a strict standard of review on appeal. We review the record to determine whether the factual findings are supported by substantial evidence. 8 U.S.C. 1105a(a)(4); Kapcia v. INS, 944 F.2d 702, 707 (10th Cir.1991). Even if we disagree with the BIA's conclusions, we will not reverse, unless the applicant's evidence "compels " a determination that the BIA erred. See INS v. Elias-Zacarias, 112 S.Ct. 812, 815 n. 1 (1993).
 
 
 8
 Upon a careful review, we conclude that there is substantial evidence to support the BIA's finding that the family failed to prove persecution on account of one of the five protected grounds and also failed to show that the Indonesian Government was unwilling or unable to protect them from the gang.
 
 
 9
 Certainly the conditions which the family reported were vicious and deplorable, and in each case the family demonstrated a well-founded fear of persecution by the gang. However, in each case, there is substantial evidence that reasons other than race precipitated the violence. Although the family offered credible testimony that Chinese may suffer discrimination in Indonesia, they did not show that the particular acts against them were racially motivated. In fact, the testimony demonstrates that the persecution resulted from the colonel's personal vendetta against the family for Mr. Kosasih's refusal to assist him. Further, Mr. Kho's "looking at the gang" is considered a challenge in Indonesian culture. R. at 199.
 
 
 10
 The family testified that they were unable to get protection from the local police. However, the evidence also revealed that other family members remain in Indonesia, apparently doing well, and testimony that the colonel's retaliation resulted from Mr. Kosasih's refusal to speak against the government undermines the claim of persecution by the government. Additionally, as the immigration judge suggested, "the diversity of the Indonesian population, the hundreds or even thousands of islands there" appear to offer safe havens within their own country. R. 186.
 
 
 11
 Finally, we do not find that the BIA abused its discretion by considering the cases separately, and even if the cases had been considered "as a whole," our review of the entire record does not compel a different result on the cases' merits.
 
 
 12
 For these reasons, we AFFIRM the BIA order upholding the immigration judge's denial of asylum and refusal to withhold deportation.
 
 
 
 [1]
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470