25 F.3d 1057
NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Jiri HAVEL, Petitioner,
v.
IMMIGRATION & NATURALIZATION SERVICE, Respondent.
 No. 93-9522.
 United States Court of Appeals,
Tenth Circuit
 May 12, 1994.
 
 ORDER AND JUDGMENT[1]
 Before SEYMOUR, Chief Judge, McKay, and BALDOCK, Circuit Judges.
 
 
 1
 Mr. Jiri Havel, pro se, seeks review of a Board of Immigration Appeals (BIA) decision denying his applications for asylum and withholding of deportation. Mr. Havel claims that he was denied the right to counsel, that he was denied a full and fair hearing, and that the Immigration Judge (IJ) and the BIA erred in their assessment of his asylum claim and in failing to grant him withholding of deportation. We affirm.[2]
 
 
 2
 Mr. Havel, a native and citizen of Czechoslovakia, was placed in deportation proceedings because he entered the United States from Canada without being inspected by an immigration officer. His hearing before the IJ was continued twice so that he could obtain counsel, and was continued a third time because a Czech interpreter was not available. When the hearing was reconvened, Mr. Havel still appeared pro se. The IJ informed him that he had had an adequate opportunity to obtain counsel and that the hearing would proceed. The IJ found Mr. Havel deportable as an alien who entered the United States without inspection. See 8 U.S.C. 1251(a)(1)(B). The IJ also denied his applications for asylum and withholding of deportation. Mr. Havel appealed this decision to the BIA and obtained an attorney for the appeal. The BIA dismissed the appeal. Mr. Havel now appeals the BIA's findings and conclusions to this court.
 
 
 3
 Due process requires that an alien in deportation proceedings be afforded a full and fair hearing. Trench v. I.N.S., 783 F.2d 181, 182-83 (10th Cir.), cert. denied, 479 U.S. 961 (1986). An alien has the right to be represented by counsel during a deportation hearing "at no expense to the Government." 8 U.S.C. 1252(b)(2). "However, there is no right to appointed counsel in deportation proceedings, and 'the fact that an alien is without counsel is not considered a denial of due process, if he does not show that he was prejudiced thereby.' " Trench, 783 F.2d at 183 (quoting Burquez v. I.N.S., 513 F.2d 751, 754 (10th Cir.1975)). Thus, we need only determine whether Mr. Havel was prejudiced at his deportation hearings because he did not have an attorney. Id.
 
 
 4
 Mr. Havel contends that he was prejudiced by the lack of counsel for two reasons. First, he argues that the admission of a Department of State advisory opinion and relevant pages from the Country Reports on Human Rights Practices for 1991 was in error, and that counsel would have been able to rebut the information contained in them. These documents, however, were properly admitted into evidence. See 8 C.F.R. 208.11(c). Before his final hearing, Mr. Havel's application for asylum was forwarded to the Department of State, pursuant to 8 C.F.R. 208.11, for an advisory opinion. The record reflects that this opinion was mailed to Mr. Havel. At the hearing, Mr. Havel stated that he had not received it. The IJ gave him a copy of the opinion, which was translated by the interpreter. The INS then submitted into evidence pages from the 1991 Country Reports. During a recess, the interpreter interpreted several identified pages in the report for Mr. Havel. In addition, Mr. Havel was represented by counsel at the BIA proceeding and could have rebutted the documents at that time but did not.
 
 
 5
 Second, Mr. Havel claims that if he had counsel, he would have been able to present "documentation" that was written in the Czech language. Mr. Havel proffered an article written in Czech that showed that the situation was getting worse in Czechoslovakia. The IJ refused to admit it into evidence under a regulation that requires a foreign language document to be "accompanied by an English language translation." 8 C.F.R. 3.33. Mr. Havel's counsel in the BIA proceeding could have proffered the translated document and could have argued that its absence from the record had prejudiced Mr. Havel's case. He did not do so. Mr. Havel has therefore not shown how his pro se status before the IJ prejudiced his case. We hold that the BIA correctly found that Mr. Havel's right to due process had not been denied.[3]
 
 
 6
 Mr. Havel also claims that the IJ and the BIA erred in assessing his asylum claim and by not granting his withholding of deportation application. A "grant of asylum requires two steps." Kapcia v. I.N.S., 944 F.2d 702, 706 (10th Cir.1991). First, Mr. Havel had to prove he was statutorily eligible for asylum by establishing that he was a refugee. Id. To establish refugee status, he had to prove either past persecution or "a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. 1101(a)(42). We review the BIA's factual findings of whether an alien is a refugee under the substantial evidence standard. Kapcia, 944 F.2d at 707.
 
 
 7
 Mr. Havel testified that because of his political opinions, he was unable to remain employed, he was beaten by police and arrested several times, he received threatening letters in the mail, and he was attacked on the street. He then came to the United States via Canada, where he was refused asylum because Czechoslovakia is a democratic state. Well-founded fear of persecution requires a "subjective 'fear' component and an objective 'well-founded' component." Id. at 706. The BIA found that even if Mr. Havel's claims were accepted as true, the political situation in Czechoslovakia has changed such that future mistreatment is unlikely, and that the democratic Czech government has taken steps to dismantle repressive security organizations. The BIA thus found that Mr. Havel did not have a well-founded fear of persecution to establish refugee status. See id. We find substantial evidence in the record to support the BIA's finding.[4]
 
 
 8
 Because the standard for withholding of deportation, "clear probability of persecution," requires more of a showing than that required to establish refugee status, see id. at 709, there is also sufficient evidence to support the BIA's determination that Mr. Havel is ineligible for withholding of deportation.
 
 
 9
 AFFIRMED.
 
 
 
 [1]
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470
 
 
 [2]
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R.App. P. 34(a); 10th Cir. R. 34.1.9. The cause is therefore ordered submitted without oral argument
 
 
 [3]
 Mr. Havel also claims that he was denied a full and fair hearing because the IJ and the BIA gave too much weight to the State Department advisory opinion and Country Reports, and the IJ would not admit the Czech language document into evidence. As explained above, the IJ properly admitted the Department of State documents, and properly denied the admission of the Czech language document. This claim thus has no merit
 
 
 [4]
 Even if an alien has established statutory eligibility as a refugee, the Attorney General has discretion to grant or deny asylum. Kapcia v. I.N.S., 944 F.2d 702, 708 (10th Cir.1991). We review this step in the BIA's decision for abuse of discretion. Id. The BIA found that, even assuming Mr. Havel had suffered past persecution on a ground that would qualify him for asylum, his persecution did not rise to the level where returning Mr. Havel would constitute an "inhumane" act. Because the BIA properly admitted evidence that the political situation in Czechoslovakia has changed, we cannot say that to deny asylum to Mr. Havel on this record was an abuse of discretion. See id. (administrative notice of the change in Poland's government sufficient to deny asylum)