39 F.3d 1191
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Yohannes ABRAHAM, Petitioner,
v.
IMMIGRATION & NATURALIZATION SERVICE, Respondent.
 No. 94-9501.
 United States Court of Appeals, Tenth Circuit.
 Nov. 3, 1994.
 
 Before TACHA, BRORBY and EBEL, Circuit Judges.
 
 ORDER AND JUDGMENT[1]
 
 1
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R.App. P. 34(a); 10th Cir. R. 34.1.9. The cause is therefore ordered submitted without oral argument.
 
 
 2
 Mr. Abraham appeals a Board of Immigration Appeals decision that gave to Mr. Abraham the alternative of departing this country voluntarily within thirty days or being deported. Having considered the record on appeal and the briefs of the parties, we affirm.
 
 
 3
 * Mr. Abraham, a twenty-five-year-old native citizen of Ethiopia was admitted into the United States in 1989 for the sole purpose of attending school. Less than sixty days later, Mr. Abraham filed a written request for asylum. Mr. Abraham has never attended school in this country.
 
 
 4
 Mr. Abraham's written request for asylum resulted in an interview with an immigration examiner. The examiner found Mr. Abraham's testimony unconvincing and gave her reasons for so concluding. Additionally, the examiner sought an evaluation of the facts brought forth by Mr. Abraham by the State Department which also opined Mr. Abraham failed to make a valid claim of persecution.
 
 
 5
 A hearing was subsequently conducted before an immigration judge.[2] We need not review this evidence; the immigration judge denied Mr. Abraham's asylum request as the judge found Mr. Abraham lacked credibility. The immigration judge gave numerous reasons for doubting Mr. Abraham.
 
 
 6
 Mr. Abraham appealed this decision to the Board of Immigration Appeals and took issue with the immigration judge's (1) factual findings; (2) denial of Mr. Abraham's motion to submit a new asylum application; and (3) disregard of documentary evidence. Mr. Abraham's brief was predicated upon the factual premise that he had a well-founded fear of future persecution should he be returned to Ethiopia rather than being based upon past persecution. The gist of Mr. Abraham's factual argument was that he was from a part of Ethiopia known as Eritrea; Eritreans were discriminated against.
 
 
 7
 The Board of Immigration Appeals sidestepped the credibility issue and held that even had Mr. Abraham's assertions been believed, he failed to establish a well-founded fear of persecution because in 1991 the then president of Ethiopia fled and in 1992 the last remnants of the president's army departed. The Board of Immigration Appeals based this conclusion upon facts it administratively noticed, these facts being:
 
 
 8
 In late May 1991, President Mengistu Haile-Mariam fled into exile. The EPLF seized the Red Sea coastline, ending a long struggle for control of the former Italian colony of Eritrea. In July 1991, a broad-based national conference adopted a charter establishing a multiparty transitional government to organize democratic and multiparty national elections before 1994. This national conference also acknowledged a separate provisional government for Eritrea under EPLF Secretary General Issaias Afwerki and endorsed an internationally supervised referendum on Eritrea's political future to be held in 2 years. By the end of 1992, approximately 110,000 EPLF regulars made up the provisional government's military and security force in Eritrea. The provisional government expelled all remaining Mengistu troops, including those accused of "war crimes." The last remnants of Mengistu's troops departed in July 1992.
 
 
 9
 Based upon these facts, the Board of Immigration Appeals drew certain inferences, which we quote:
 
 
 10
 Given the profound political changes in Ethiopia, including the downfall of the Mengistu regime and the creation of the EPLF-controlled provisional government in Eritrea, we find that there no longer exists any basis for the respondent's claim that he has a well-founded fear of persecution by the Government of Ethiopia on account of EPLF activities imputed to him or because of the fact that he is from Eritrea.
 
 II
 
 11
 "An agency's discretion to take administrative notice depends on the particular case before it." De la Llana-Castellon v. INS, 16 F.3d 1093, 1097 (10th Cir.1994). This Circuit has decided three cases dispositive to the issue raised in this appeal: Llana, 16 F.3d 1093; Baka v. INS, 963 F.2d 1376 (10th Cir.1992); and Kapcia v. INS, 944 F.2d 702 (10th Cir.1991). Collectively, these cases stand for the propositions that (1) administratively noticed facts must not be subject to reasonable dispute; (2) the inferences drawn from the facts must be reasonable and comport with common sense; (3) the Board of Immigration Appeals must undertake a particularized consideration of the applicant's case; and (4) the Board of Immigration Appeals must give an applicant for asylum notice and an opportunity to be heard if it intends to overturn an immigration judge's asylum decision based upon administratively noticed facts.[3]
 
 
 12
 Mr. Abraham basically asserts the Board of Immigration Appeals breached each of the four requirements and asks we reverse. We examine each contention in turn.
 
 
 13
 The facts, which were administratively noticed, are not in reasonable dispute. These facts are easily verifiable and Mr. Abraham has never contended the facts are inaccurate in whole or in part.
 
 
 14
 Mr. Abraham complains about the inferences drawn from the facts. The inferences basically stated there have been profound political changes in Ethiopia, including the creation of an Eritrean-controlled government in Eritrea, and consequently there is no basis for a well-founded fear of persecution. These inferences are proper based upon the facts administratively noticed. Mr. Abraham complains that he is Eritrean and that Eritreans suffered discrimination at the hands of the former government which was not Eritrean. It stands to reason that when the present government is Eritrean and the old government has fled, Eritreans would not expect to suffer persecution. We find no merit to Mr. Abraham's argument.
 
 
 15
 Mr. Abraham argues the Board of Immigration Appeals erroneously applied the administrative notice to his case. This argument merits little discussion. The Board of Immigration Appeals applied the facts administratively noticed to the facts claimed by Mr. Abraham in a particularized fashion.
 
 
 16
 Finally, Mr. Abraham asserts the Board of Immigration Appeals violated Llana in failing to provide notice of its intent to use administratively noticed facts. We distinguish Llana, which required notice of such acts if it intends thereby to overturn an immigration judge's asylum grant. In Mr. Abraham's case, the immigration judge did not grant asylum. Llana, by its own terms, does not apply.
 
 
 17
 Assuming, without deciding, that the Board of Immigration Appeals should have given Mr. Abraham an opportunity to respond, we must still affirm. Notice and an opportunity to be heard are significant rights; however, remanding when the accuracy of the easily verifiable facts has not been challenged is an exercise in futility. Had Mr. Abraham made any claim that the facts administratively noticed were inaccurate in whole or in part, then some purpose would be served by a remand in order for Mr. Abraham to have an opportunity to respond. Due process does not require notice and an opportunity to respond when one does not contest the accuracy. Fed.R.Evid. 201(e) states a party is entitled "upon timely request" to an opportunity to be heard as to the propriety of taking judicial notice and the tenor of the matter noticed. The rule further provides that in the absence of prior notification the request may be made after judicial notice has been taken. We believe the principles of this rule are satisfied in the case before us.
 
 
 18
 The decision of the Board of Immigration Appeals is AFFIRMED.
 
 
 19
 The mandate shall issue forthwith.
 
 
 
 [1]
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470
 
 
 [2]
 This hearing was continued several times at Mr. Abraham's request and consequently was not held until March 1990
 
 
 [3]
 Mr. Abraham highlights a recent Ninth Circuit case, Getachew v. INS, 25 F.3d 841 (9th Cir.1994). We decline to follow Getachew because the Ninth Circuit already had a rule that "the Board must ... warn the asylum applicant before taking notice of significant events that occurred after the deportation hearing." Id. at 846 (emphasis in original). The Tenth Circuit does not have a similar requirement. In Getachew, the Board of Immigration Appeals affirmed an immigration judge's decision to deport an Ethiopian man based upon the administratively noticed change of government in Ethiopia. The Ninth Circuit reversed the Board's decision because the applicant was not given notice or an opportunity to respond