46 F.3d 1150
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Daniel ASZALOS, Petitioner,
v.
IMMIGRATION & NATURALIZATION SERVICE, Respondent.
 No. 94-9542.
 United States Court of Appeals, Tenth Circuit.
 Jan. 31, 1995.
 
 ORDER AND JUDGMENT[1]
 Before MOORE, BARRETT, and EBEL, Circuit Judges.
 
 
 1
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this petition. See Fed.R.App.P. 34(a); 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.
 
 
 2
 Petitioner Daniel Aszalos appeals the final decision of the Board of Immigration Appeals (BIA) denying his request for asylum and withholding of deportation. Because the BIA's decision is supported by substantial evidence, we affirm.
 
 
 3
 Mr. Aszalos, a Romanian citizen, entered the United States as a business visitor on February 10, 1992, and overstayed his visa. On November 18, 1992, the Immigration and Naturalization Service initiated deportation proceedings. Mr. Aszalos conceded deportability, but requested asylum, submitting a statement that described both verbal and occasional physical abuse at school and work, based on his religion, his nationality, and his political beliefs. R. at 207-10.
 
 
 4
 Mr. Aszalos was adopted by a Jewish mother and a Hungarian father, who were both actively anti-communist. At a hearing before an immigration judge (IJ), Mr. Aszalos testified that he had been mistreated in Romania because of this background. Specifically, he testified that he was imprisoned for seven days while attending military school because he and his parents opposed the communist regime, id. at 40-41; that a letter from a friend appeared to have been opened, id. at 47; that he was questioned why he attended a synagogue and threatened with "problems" if he continued to go there, id. at 49; that Hungarians are not given the best jobs and are harassed if they speak Hungarian, id. at 50; and that he believed that he was not given the job he was trained for because of his background, id. at 67. His affidavit also indicated that his teachers beat him because he was Hungarian and Jewish, id. at 207-08; that his parents had been sent to a labor camp in 1952, id. at 207; and that his daughter was called names and had been beaten by schoolmates, id. at 209.
 
 
 5
 Mr. Aszalos testified to his fear of future persecution, stating that if he returned to Romania, the government might attempt to prosecute him for revealing state secrets, id. at 44-45; and that he faces retribution by his former supervisor, to whom he owes bribe money. Id. at 42-43. Mr. Aszalos submitted several articles showing a rise in anti-Semitism and ethnic hatred in Romania. Id. at 105-200.
 
 
 6
 The IJ found that Mr. Aszalos' testimony, although indicative of harassment and discrimination, did not rise to the level of past "persecution." The IJ also concluded that because of the widespread changes in Romania, Mr. Aszalos did not have a "well-founded" fear of future persecution if returned there. The BIA affirmed, and this appeal followed.
 
 
 7
 We review the BIA's determination of refugee status under a substantial evidence standard. INS v. Elias-Zacarias, 502 U.S. 478, 112 S.Ct. 812, 815 (1992)("The BIA's determination that [the alien] was not eligible for asylum must be upheld if 'supported by reasonable, substantial, and probative evidence on the record considered as a whole.' ") (quoting 8 U.S.C. 1105a(a)(4)).[2]
 
 
 8
 The Attorney General has discretion to grant asylum to an otherwise deportable alien who qualifies as a "refugee" within the meaning of 8 U.S.C. 1101(a)(42)(A). Id. at 1158(a). "[A] grant of asylum requires two steps." Kapcia v. INS, 944 F.2d 702, 706 (10th Cir.1991). The alien must first establish that he or she is eligible for refugee status by presenting specific facts that show either past persecution or a genuine and reasonable fear of future persecution " 'on account of race, religion, nationality, membership in a particular social group, or political opinion.' " Id. at 706 (quoting 8 U.S.C. 1101(a)(42)). Upon demonstrating refugee status, the alien must then show that a favorable exercise of discretion is warranted. Id. at 708.
 
 
 9
 We conclude that substantial evidence supports the BIA's determination that Mr. Aszalos was not "persecuted" and that he does not have a well-founded fear of future persecution. To establish eligibility for asylum based on past persecution, "an alien must show past persecution so severe that repatriation would be inhumane." Baka, 963 F.2d at 1379. Here, Mr. Aszalos received an extensive education and held a good job for seventeen years with the national airline. Although he experienced some physical violence and a seven-day imprisonment at school, these events occurred almost twenty years ago. Since then, Mr. Aszalos has described only isolated incidents of verbal harassment, and two physical altercations with nongovernmental co-workers. This does not "indicate a level of persecution which would 'so sear a person with distressing associations ... that it would be inhumane to force him to return.' " Id. (quoting Skalak v. INS, 944 F.2d 364, 365 (7th Cir.1991)).
 
 
 10
 As for the danger of future persecution, the harm threatened by Mr. Azsalos' former supervisor is not on account of his religion, nationality or political opinion, but stems from Mr. Aszalos' failure to pay a promised bribe. Mr. Aszalos' fear of prosecution for selling state secrets is merely speculative.
 
 
 11
 Even assuming that anti-Semitism and ethnic hatred are increasing in Romania, Mr. Aszalos has not shown that this is government-sponsored or that the government is unwilling or incapable of controlling such conduct by private individuals. See Bartesaghi-Lay, 9 F.3d at 822. In fact, Romania's Constitution now forbids discrimination based on religion or ethnic origin, and the government is taking an active role to alleviate ethnic tensions. See R. at 83-85; 97-100. Further, the Hungarian political party's successful acquisition of twenty-seven seats in Parliament will strengthen the ability of Hungarians to prevent ethnic persecution. The State Department's assessment of Romania in its Country Reports on Human Rights Practices for 1992, id. at 93-101, and its advisory opinion, id. at 83-86, support the conclusion that Mr. Aszalos' fear of future persecution is not well-founded.
 
 
 12
 Because Mr. Aszalos failed to meet his burden of establishing eligibility for refugee status, we need not address whether his circumstances warranted a favorable exercise of discretion. Castaneda, 23 F.3d at 1578. Similarly, Mr. Aszalos' inability to meet the asylum requirements is fatal to his application for withholding of deportation, which is governed by a tougher standard. See id.
 
 
 13
 The decision of the Board of Immigration Appeals is AFFIRMED.
 
 
 
 [1]
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470
 
 
 [2]
 Whether an alien has been persecuted, and whether the alien has a well-founded fear of future persecution, are questions of fact. In light of the Supreme Court's holding in Elias-Zacarias, as well as our consistent application of the substantial evidence standard at step one of the asylum inquiry, e.g., Castaneda v. INS, 23 F.3d 1576, 1578 (10th Cir.1994); Bartesaghi-Lay v. INS, 9 F.3d 819, 822 (10th Cir.1993); Baka v. INS, 963 F.2d 1376, 1379 (10th Cir.1992), we decline Mr. Aszalos' invitation to revise the standard of review