**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAY 22 2001**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

ANDREI VLADIMIR
FRANTSOUZOV,

      Petitioner,

v.

IMMIGRATION &
NATURALIZATION SERVICE,

      Respondent.

No. 00-9506
(BIA File No. A72 451 760 )

---

**ORDER AND JUDGMENT**[*]

---

Before **SEYMOUR**, Circuit Judge, **McWILLIAMS**, Circuit Judge, and **BELOT**, District Judge.[**]

---

This is an immigration case. Andrei Vladimir Frantsouzov ("Petitioner"), now a thirty-year old native and citizen of Russia, entered the United States on or about February 17, 1991 pursuant to a valid non-immigrant visitor's visa. He

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[**] Honorable Monti L. Belot, District Judge, United States District Court for the District of Kansas, sitting by designation.

was authorized to remain in the United Stated until August 6, 1992. On about May 18, 1992, prior to the expiration date on his visa, Petitioner submitted an application for asylum with the Houston Asylum Office of the Immigration and Naturalization Service ("INS").[1] Following an interview concerning his application for asylum, he was sent a notice of intent to deny, and he replied to that notice by submitting additional documents. The application for asylum was later referred to the Immigration Court through the issuance of an Order to Show Cause, dated October 9, 1992. The show cause order alleged that Petitioner was deportable because he had remained in the United States longer than authorized. Appearing *pro se* before Immigration Judge G. McKenzie Rast in Denver, Colorado on January 6, 1993, Petitioner admitted the allegations in the show cause order and conceded his deportability, but, at the same time, asked permission to renew his application for asylum.[2]

A hearing on the merits of Petitioner's application was conducted before Judge Rast on August 20, 1993. At that hearing the Judge accepted into evidence various documents, and heard testimony from the Petitioner and two supporting witnesses. At the conclusion of that hearing Judge Rast denied Petitioner's

---

[1] At the time Petitioner submitted an application for asylum he was not represented by legal counsel.

[2] Under the regulations promulgated by the Attorney General, applications for asylum are treated as simultaneous applications for withholding of deportation. *See* 8 C.F.R. §208.3(b).

application for asylum, and granted him the privilege of voluntary departure until September 20, 1993. At this juncture, Petitioner retained legal counsel and a timely Notice of Appeal was filed on August 27, 1993, with the Board of Immigration Appeals ("Board").

Six and one-half years later, on February 15, 2000, the Board filed its decision and order wherein it affirmed the decision of the Immigration Judge, adopted his findings and conclusions "as our own" and dismissed the appeal. On March 7, 2000, Petitioner filed in this Court a Petition for Review of the Board's dismissal of his appeal from the decision of the Immigration Judge. Subsequent thereto, Petitioner submitted to the Board a motion to reopen his case, the motion being supported by three hundred and fifty pages of supplemental documentation concerning events occurring during the six and one-half years his appeal was pending before the Board. That motion is pending before the Board.

As above indicated, Petitioner conceded his deportability, since he had overstayed his visa's expiration date, and at the hearing before the Immigration Judge on August 20, 1993, the only issue was Petitioner's right to asylum status. As concerns the asylum aspect of this case, in *Sadeghi v. Immigration & Naturalization Service*, 40 F.3d 1139, 1142 (10th Cir. 1994), we spoke as follows:

> The granting of asylum under 8 U.S.C. §1158(a) is a
> two-step process. First, the alien must prove statutory

eligibility for asylum by establishing that he or she is a refugee. Second, if the alien establishes refugee status, the Attorney General then applies her discretion to grant or deny asylum. *Kapcia v. INS*, 944 F.2d 702, 706, 708 (10th Cir. 1991). We are only concerned with the first step in this appeal.

"To establish refugee status, the alien must prove either past 'persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.'" *Id.* at 706 (quoting 8 U.S.C. §1101(a)(42)). The "well-founded fear of persecution" standard, with which we are concerned in this appeal, involves both a subjective "fear" component, and an objective "well-founded" component. The subjective component requires that the alien's fear be genuine. However, this component is not relevant until the alien proves the objective component. *Id.*

The alien has the burden of proving the objective component through credible, direct, and specific evidence of facts that would support a reasonable fear that he faces persecution *Id.* at 707, 708. We review the Board's findings to determine whether reasonable, substantial and probative evidence supports them and may reverse only if petitioner presented evidence that compels the conclusion he has a well-founded fear of persecution based on a statutory factor. *INS v. Elias-Zacarias*, 502 U.S. 478 (1992).[3]

At the conclusion of the hearing before the Immigration Judge on August 20, 1993, the Judge in an oral decision held that Petitioner was deportable, which had been conceded. After reviewing in some detail the evidentiary matter, the

---

[3] To same effect, see *Hadjimehdigholi v. Immigration and Naturalization Service*, 49 F.3d 642 (10th Cir. 1995).

Judge then concluded, in effect, that Petitioner had failed to show that he had been subjected to past persecution in Russia or that there was a well-founded fear of future persecution in Russia should he be returned, which fear was subjectively genuine and objectively reasonable. Accordingly, the Judge held that the Petitioner had failed to show that he was a "refugee" and therefore was ineligible for asylum or withholding of deportation.

Petitioner's evidence at the hearing showed that in March or April, 1990 he took a brief trip to Germany. After returning to Russia from Germany he was twice interrogated by the KGB. The first interview occurred shortly after he returned from Germany and concerned his trip. That interview lasted for some 20-30 minutes. Apparently Petitioner had no particular information of interest to the KGB concerning his trip, which, according to the Petitioner, seemed to irk the KGB. In November 1990, after he had obtained his visa to come to the United States he was again interviewed, for 20-30 minutes by the KGB, this time concerning, *inter alia*, his forthcoming visit to the United States. Petitioner testified that after he came to the United States, former agents of the KGB, the KGB having been disbanded in the change in government in Russia, questioned his mother, had searched her apartment, and generally inquired of her about his plans, all in a threatening manner. Petitioner also indicated that some of his correspondence between himself and his mother had not been delivered and that a

phone call to his mother had been disconnected. One of Petitioner's witnesses, a student of Russian government, testified that after the KGB was disbanded some of its former members, acting outside the law as "outlaws," continue to harass others, possibly hoping to extort money from them. As indicated, the Immigration Judge concluded that such evidence did not show past persecution or a subjectively genuine and objectively reasonable fear of future persecution should Petitioner be returned to Russia.

The Board, on appeal by the Petitioner from the Immigration Judge's decision, affirmed the Judge's decision. Specifically, the Board concluded that Petitioner "failed to demonstrate that he suffered past persecution or has a well-founded fear of future persecution in Russia on account of his race, religion, nationality, membership in a particular social group, or political opinion."

Our study of the record convinces us that the Board did not err in refusing to overrule the Immigration Judge since the record and the applicable authorities support his decision.[4] The Board is not required to discuss every piece of

---

[4] Both parties agree that this Court has jurisdiction to hear Petitioner's Petition to Review the Board's Decision and Order. In this regard, we recognize that on September 30, 1996, the President signed into law the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub. L. 104-208, 110 Stat. 3009 (1996). The statute contains significant amendments to the Immigration and Naturalization Act, including a provision repealing Immigration and Naturalization Act §106 and replacing it with a new "permanent" judicial review provision to be codified at 8 U.S.C. §1252, et seq. This "permanent"

(continued...)

-6-

evidence when it renders a decision. *Hadjimehdigholi v. Immigration & Naturalization Service*, 49 F.3d 642, 648 n. 2 (10th Cir. 1995). We may reverse the Board only if the Petitioner has presented evidence that "compels the conclusion that he has a well-founded fear of persecution based on a stated statutory factor." *Sadeghi,* 40 F.3d at 1142. The Petitioner's evidence in the instant case did not <u>compel</u> either the Immigration Judge or the Board to find his entitlement to asylum, or withholding of deportation.

The Board's Decision and Order is affirmed.

ENTERED FOR THE COURT

Robert H. McWilliams
Senior Circuit Judge

---

[4](...continued)
judicial review Section does not apply to this case although IIRIRA's "transition" rules for judicial review do apply in cases such as this where the Board's order was issued on or after October 31, 1996, in administrative proceedings that were commenced before April 1, 1997. *See* IIRIRA §§ 306(c)(1) and 308(a). As indicated, the Board's opinion was filed after October 1996 and the administrative proceeding commenced when an Order to Show Cause issued on October 9, 1992.