UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

CESAR MAURO BERNARDO JARA
and ROSAMARIA GARCIA JARA,

Petitioners,

v.                                                          No. 99-9534

IMMIGRATION &
NATURALIZATION SERVICE,

Respondent.

ORDER
Filed October 10, 2000

Before **TACHA** , **PORFILIO** , and **EBEL** , Circuit Judges.

This matter is before the court on appellants' petition for rehearing and
suggestion for rehearing en banc. The materials submitted by appellants have
been reviewed by the members of the hearing panel, who conclude that the
original disposition was correct. Therefore, appellants' petition for rehearing is
denied on the merits.

The petition having been denied on the merits by the panel to which the
case was submitted, the suggestion for rehearing en banc was transmitted to all
the judges of the court in regular active service in accordance with Rule 35(b) of

the Federal Rules of Appellant Procedure. No member of the hearing panel and no judge in regular active service on the court having requested that the court be polled on rehearing en banc, the suggestion for rehearing en banc is denied.

An amended order and judgment is filed this date. The mandate issued prematurely on August 31, 2000. The mandate is recalled and reissued this date.

Entered for the Court
Patrick Fisher, Clerk of Court

By:
    Keith Nelson
    Deputy Clerk

F I L E D
United States Court of Appeals
Tenth Circuit

AUG 9 2000

PATRICK FISHER
Clerk

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

CESAR MAURO BERNARDO JARA
and ROSAMARIA GARCIA JARA,

Petitioners,

v.

IMMIGRATION &
NATURALIZATION SERVICE,

Respondent.

No. 99-9534
(Nos. A70 782 172 &
A70 818 304)
(Petition for Review)

ORDER AND JUDGMENT *

Before **TACHA** , **PORFILIO** , and **EBEL** , Circuit Judges.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this petition for review. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

---

* This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Petitioners Cesar Maura Bernardo Jara and Rosamaria Garcia Jara, citizens and natives of the Philippines, seek appellate review of the Board of Immigration Appeals' (BIA) affirmance of the immigration judge's denial of their applications for asylum and withholding of deportation pursuant to 8 U.S.C. §§ 1158(a) and 1253(h) (1996). [1] Based on our review of the parties' briefs, the BIA's decision, the administrative record, and the applicable law, we conclude that the BIA's decision is supported by substantial evidence. We exercise jurisdiction pursuant to 8 U.S.C. § 1105a(a), [2] deny the petition, and affirm.

## I. Background

Petitioner was admitted to the United States on August 24, 1992, as a nonimmigrant visitor for pleasure and remained beyond the authorized time.

---

[1] Although both parties applied for asylum and withholding of deportation, because Mrs. Jara's claim was derivative of her husband's claim, their applications were consolidated upon their attorney's request. Therefore, we address only Mr. Jara's claim directly and refer throughout this discussion to Mr. Jara in the singular.

[2] Section 1105a was repealed by § 306(b) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), Pub. L. No. 104-208, 110 Stat. 3009, which alters the availability, scope, and nature of judicial review in INS cases. Because petitioner's deportation proceedings commenced before April 1, 1997, IIRIRA's permanent "new rules" do not apply to this case. *See id*. § 309(a), (c)(1). However, IIRIRA's "transitional rules" do apply, because in this case the agency's final order was filed more than thirty days after IIRIRA's September 30, 1996 date of enactment. *See id*. § 309(c)(4). The repeal of § 1105a is not effective in cases such as this one where the transitional rules are in effect. *See id*. § 309(c)(1).

Petitioner applied for asylum on April 21, 1993. In his application, he claimed he feared for his life if he returned to the Philippines. Petitioner based this fear on his past participation in an anti-drug task force and his anti-drug platform while campaigning as a candidate for city council in the Philippines. Petitioner alleged that while he was active with the anti-drug task force, he helped to identify and arrest a local drug pusher, Harold Villamor. Petitioner alleged that Juanito Asi, a major drug kingpin, used his influence with the government to get the charges against Villamor dismissed. When Villamor was released from custody, he brought charges against petitioner and other members of the task force for attempted murder and robbery. After bribing airport officials, petitioner was able to travel to the United States, a decision he made, according to his wife, in order to allow things to "calm down." Admin. R. at 467.

Mrs. Jara asserted that when she was told by a co-worker (allegedly the mistress of Juanito Asi), that her life was in danger after her husband left the country, she contacted petitioner who returned to the Philippines in order to assist Mrs. Jara and the couple's youngest son in obtaining visas to the United States. Once they were in the United States, petitioner was informed by his Philippines attorney that Juanito Asi had agreed to get the charges against petitioner dropped

-3-

for a payment of $5,800. Petitioner did not make this payment.[3] He did, however, return to the Philippines another time to attempt to obtain visas for his remaining four children. His attempt was unsuccessful.

At a deportation hearing on July 18, 1996, petitioner conceded deportation, renewed his application for asylum and withholding of deportation, and in the alternative, requested voluntary departure. The immigration judge denied his application for asylum and withholding of deportation, but granted his request for voluntary departure. Accepting as true petitioner's factual account of the consequences of his anti-drug activities, the BIA concluded that the facts related by petitioner of alleged past persecution did not rise to the level of persecution as that term has been interpreted by this court and by the BIA. Moreover, the BIA found that petitioner had not presented evidence indicating that he was subjected to mistreatment because of his political opinion.[4] We agree.

---

[3] Petitioner testified at the deportation hearing that he eventually paid the sum of $1,000, and the charges against him were dismissed.

[4] The BIA noted that although petitioner had claimed persecution due to political opinion and social group membership, he failed to present any argument, either at his deportation hearing or on appeal to the BIA, regarding the nature of the social group. For this reason, the BIA declined to consider whether petitioner had been persecuted because of his membership in a social group. Insofar as petitioner attempts to assert this claim to this court, we also decline to consider the issue. *See Nguyen v. INS*, 991 F.2d 621, 623 n.3 (10th Cir. 1993) (holding that a failure to raise an issue to the BIA deprives this court of jurisdiction to consider the issue).

## II. Discussion

The Attorney General has discretion to grant asylum to an otherwise deportable alien who qualifies as a "refugee" within the meaning of 8 U.S.C. § 1101(a)(42)(A). *See id*. § 1158(b)(1). "[A] grant of asylum requires two steps." *Kapcia v. INS*, 944 F.2d 702, 706 (10th Cir. 1991). First, the applicant must establish that he is eligible for refugee status. *See id*.; 8 C.F.R. § 208.13(a) (placing burden of proof on asylum applicant to establish refugee status). If the applicant establishes his statutory eligibility as a refugee, the Attorney General then applies her discretion to grant or deny asylum. *See Kapcia*, 944 F.2d at 708. Because both the immigration judge and the BIA concluded that petitioner did not qualify for refugee status, in this review we are concerned only with the first step.

On review, we apply a substantial evidence standard to the BIA's determination of whether an alien has established his status as a refugee. *See Castaneda v. INS*, 23 F.3d 1576, 1578 (10th Cir. 1994). Thus, the BIA's conclusion that an alien is "not eligible for asylum must be upheld if 'supported by reasonable, substantial, and probative evidence on the record considered as a whole.'" *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992) (*quoting* 8 U.S.C. § 1105a(a)(4)). "It can be reversed only if the evidence presented by [the alien] was such that a reasonable factfinder would have to conclude that the requisite fear of persecution existed." *Id.*

"To establish refugee status, the alien must prove either past 'persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.'" *Kapcia,* 944 F.2d at 706 (*quoting* 8 U.S.C. § 1101(a)(42)). If the applicant establishes that he is a victim of past persecution, a presumption arises that the applicant has a genuine and reasonable fear of future persecution. *See* 8 C.F.R. § 208.13(b)(1)(i). The INS can rebut this presumption only "if a preponderance of the evidence indicates that since the time the persecution occurred, country conditions have changed such that the applicant's fear is no longer well-founded." *Nazaraghaie v. INS*, 102 F.3d 460, 462 (10th Cir. 1996).

Initially, petitioner contends that the BIA erred in finding that he did not suffer past persecution based on political opinion. In considering the availability of political opinion asylum, the Supreme Court in *Elias-Zacarias*, held that the applicant first must show the persecution occurred because of his own political opinion, and not because of the political opinions of his persecutor. *See* 502 U.S. at 482. Asylum is granted only to those who are persecuted on account of their membership in an oppressed group; victims of persecution are not eligible for asylum merely because their persecutors are coincidentally involved in factional politics. *See id.* at 482-84. Second, the applicant for asylum must prove a causal connection between the persecution and the political opinion. *See id.* at 483.

We agree with the BIA's finding that any past mistreatment suffered by petitioner was motivated solely by his assistance in the arrest of Villamor. He attempted to establish a nexus between this incident and political motivation by asserting that Asi, the drug kingpin allegedly responsible for the charges, had ties with the New Peoples' Army (NPA), a political group allegedly involved with the drug trade in the Philippines. We agree with the INS, however, that the record is lacking in any evidence of this connection.

Following *Elias-Zacarias,* persecution on account of political opinion could no longer can be inferred merely from mistreatment by others who may have differing political views. *See id.* at 482-83. Even if, as petitioner asserts, the Philippine government was more lenient in dealing with the trafficking of illegal drugs than petitioner would have preferred, this difference of opinion does not establish the necessary nexus between the mistreatment and political motive. Therefore, petitioner failed to show, by "direct or circumstantial" evidence, that his mistreatment was "on account of" his political beliefs. *See id.*

We also affirm the BIA's conclusions that the alleged mistreatment suffered by petitioner did not rise to the level of persecution and that petitioner did not establish a well-founded fear of persecution. Defining what it is that constitutes "persecution" is, as the Seventh Circuit described it, "a most elusive and imprecise task." *Balazoski v. INS*, 932 F.2d 638, 641 (7th Cir. 1991).

-7-

According to the Ninth Circuit, persecution "does not include every sort of treatment our society regards as offensive." *Ghaly v. INS*, 58 F.3d 1425, 1431 (9th Cir. 1995) (quotation omitted). In *Hadjimehdigholi v. Immigration & Naturalization Service*, 49 F.3d 642 (10th Cir. 1995), we stated that "[p]ersecution has been defined as the offensive infliction of suffering or harm and encompasses more that just restrictions or threats to life and liberty." 49 F.3d at 646 (quotations omitted).

The only act of persecution offered by petitioner is his allegation that he was falsely charged with attempted murder and robbery in connection with his aid to the anti-drug task force in apprehending and arresting Villamor. It appears, however, that petitioner was not jailed after he was charged with the crimes, and in fact, was able to leave the country. [5] Although, Mrs. Jara was told by a co-worker that her life was in danger, there was no evidence that she was ever threatened by the Philippine government or any political faction at work in the country. Petitioner's older children were able to remain safely in the Philippines to finish their education, marry, and hold good jobs. [6] Moreover, petitioner

---

[5] Petitioner alleged that he was able to leave the Philippines by bribing airport officials. He also was able to return to and depart the Philippines two subsequent times. Even assuming that petitioner could not leave the country "through regular channels, such a restriction would not constitute persecution." *Hadjimehdigholi*, 49 F.3d at 648.

[6] Mrs. Jara testified that the couple had four children remaining in

(continued...)

testified that the murder and robbery charges had been dropped more than five years earlier. Therefore, it is clear that the BIA's determination that petitioner has not suffered treatment that would rise to the level of persecution was supported by substantial evidence.

It is equally clear that petitioner has not established a well-founded fear of persecution. In *Hadjimehdigholi*, we stated:

> The well-founded fear of persecution standard is comprised of both a subjective and an objective component. The subjective component requires that the alien's fear be genuine. This is relevant only if the petitioner establishes that the fear is objectively reasonable by proving facts that would support a reasonable fear that the petitioner faces persecution.

*Id.* (internal quotations omitted); *see also Kapcia*, 944 F.2d at 706 (holding that fear of persecution is well-founded if it is subjectively genuine and objectively reasonable). The objective component requires the asylum applicant to show a "reasonable possibility of suffering . . . persecution if he . . . were to return" to the country of persecution. 8 C.F.R. § 208.13(b)(2). The burden of meeting this objective component lies with the asylum applicant, and must be met by "credible, direct, and specific evidence" in the record. *Kapcia*, 944 F.2d at 708.

---

[6](...continued)
the Philippines–two in medical school, one married and working in his father-in-law's insurance business, and one working as an executive secretary. *See* Admin. R. at 151.

The BIA determined that appellant did not show his fear of persecution to be well-founded. We agree. Petitioner failed to provide sufficient evidence to establish that, if he were to return to the Philippines, he would be subjected to any "offensive infliction of suffering or harm," by drug dealers who disagree with his political opinions, or by any government officials supportive of the drug trade. *Hadjimehdigholi*, 49 F.3d at 646. Because petitioner has not established an objectively reasonable possibility that he will be subjected to persecution upon his return to the Philippines, we need not address petitioner's subjective fears. *See Kapcia*, 944 F.2d at 708.

In sum, the evidence does not compel a conclusion that petitioner suffered past persecution or has a well-founded fear of future persecution if he is deported. *See Elias-Zacarias*, 502 U.S. at 483-84 (in order to establish refugee status, petitioner's evidence must not just support a conclusion that he suffered persecution, but must be "so compelling that no reasonable factfinder" could find differently). Therefore, because petitioner did not meet the heavy burden set forth by the Supreme Court in *Elias-Zacarias*, we must uphold the BIA's denial of his request for asylum. [7]

---

[7] Because petitioner was not able to establish refugee status under the more lenient standard for asylum, he obviously cannot satisfy the more stringent standard required for withholding of deportation. *See Castaneda*, 23 F.3d at 1578. Therefore, we also affirm the BIA's denial of petitioner's request for withholding of deportation.

The decision of the BIA is AFFIRMED.

Entered for the Court


David Ebel
Circuit Judge