**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**May 18, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

VAAGN GRIGORIAN,

Petitioner,

v.

ALBERTO R. GONZALES, United
States Attorney General,

Respondent.

No. 06-9568
(No. A95-446-780)
(Petition for Review)

---

**ORDER AND JUDGMENT**[*]

---

Before **BRISCOE**, **SEYMOUR**, and **ANDERSON**, Circuit Judges.

---

Vaagn Grigorian, a native and citizen of Armenia, petitions for review of a
final order of removal. Our jurisdiction arises under 8 U.S.C. § 1252(a)(1), and
we dismiss the petition in part and deny it in part.

The government charged that Mr. Grigorian entered the United States
illegally and was removable under 8 U.S.C. § 1182(a)(6)(A)(i). He conceded that

---

[*]      After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is
therefore ordered submitted without oral argument. This order and judgment is
not binding precedent, except under the doctrines of law of the case, res judicata,
and collateral estoppel. It may be cited, however, for its persuasive value
consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

he was removable but sought asylum, restriction on removal, and relief under the United Nations Convention Against Torture (CAT). He testified that he worked as a senior investigator for the Armenian Ministry of Internal Affairs. In September 2001 he was ordered to investigate the former head of the Armenian prison system for official misconduct that could serve as pretext for the real reason the official was removed from his position—accusing the Armenian president of involvement in a deadly attack on the Armenian Parliament in 1999. Finding no misconduct, he was ordered to fabricate evidence. When he refused, he was fired.

One week later he was called into the Armenian Ministry of Defense, where he was left alone for four hours, then interrogated for four hours about his refusal to follow orders. He was beaten, sustaining a cut over his eye when he hit his head on a table, and his interrogators "tried to threaten" him. Admin. R. at 124. He was released but his passport was confiscated. At some point his house was ransacked, apparently by uniformed officials, but nothing of value was taken. He then was followed as he drove to his mother's house and, upon leaving there, heard what he thought was a gunshot and fled on foot. He obtained a counterfeit passport, left Armenia, and arrived in the United States in November 2001.

The Immigration Judge (IJ) found Mr. Grigorian's story generally credible but denied asylum on two grounds, (i) that the mistreatment was not severe enough and the gunshot threat too vague to constitute persecution, and (ii) that

Mr. Grigorian's fear of future persecution was speculative and not based on a protected ground. The IJ also denied restriction on removal and CAT relief.

The Board of Immigration Appeals (BIA) summarily affirmed the IJ's decision pursuant to 8 C.F.R. § 1003.1(e)(4); therefore, we review the IJ's decision. *Uanreroro v. Gonzales*, 443 F.3d 1197, 1203 (10th Cir. 2006). The IJ's "findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). "[T]he IJ's adverse asylum decision must be upheld if supported by reasonable, substantial and probative evidence on the record as a whole." *Wiransane v. Ashcroft*, 366 F.3d 889, 897 (10th Cir. 2004) (quotation omitted). Because Mr. Grigorian appears pro se, we review his filings in this court liberally but do not act as his advocate. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 & n.3 (10th Cir. 1991).

To be eligible for a discretionary grant of asylum, Mr. Grigorian must first show that he is a refugee. *See Wiransane*, 366 F.3d at 893. Generally, an asylum applicant can establish refugee status by showing that he has suffered persecution, or has a well-founded fear of future persecution, on account of a protected ground—race, religion, nationality, membership in a particular social group, or political opinion. *See id.*; 8 U.S.C. § 1101(a)(42)(A) (defining "refugee"). But in both his notice of appeal to the BIA and his supporting brief, which were filed by counsel, Mr. Grigorian made only broad, conclusory assertions of error in the IJ's future-persecution findings that were unsupported by any discussion of the

-3-

pertinent facts. Consequently, he failed to exhaust his administrative remedies as to that issue, and we lack jurisdiction over it. *See* 8 U.S.C. § 1252(d)(1) (setting forth exhaustion requirement); *Rivera-Zurita v. INS*, 946 F.2d 118, 120 n.2 (10th Cir. 1991) (holding that issue exhaustion is jurisdictional and review does not extend to points an alien could have made before the BIA but did not); *cf.* 8 C.F.R. § 1003.3(b) (providing that the notice of appeal must identify specific contested facts when dispute is over factual findings).[1] Thus, Mr. Grigorian may establish refugee status only by showing that he has suffered past persecution.

Although persecution is not defined in the immigration statutes or regulations, we have characterized it as "the infliction of suffering or harm upon those who differ (in race, religion, or political opinion) in a way regarded as offensive and requires more than just restrictions or threats to life and liberty." *Woldemeskel v. INS*, 257 F.3d 1185, 1188 (10th Cir. 2001) (quotations omitted). Assuming that Mr. Grigorian's mistreatment was on account of his political opinion, as he argues, it does not meet this standard. In *Kapcia v. INS*, one of the petitioners seeking asylum, Stanislaw Saulo, alleged that on account of his political affiliation, he was detained for a two-day period, interrogated, beaten, assigned poor work tasks, denied bonuses, and fired. 944 F.2d 702, 704 (10th Cir. 1991). He also alleged that his parents' home was searched and that he

---

[1]    Even if we concluded that Mr. Grigorian exhausted the future-persecution issue, we would agree with the IJ that any future mistreatment would not be on account of a protected ground.

was conscripted into the Polish army and constantly harassed. *Id.* He further claimed that a few years later, he was detained for several hours and beaten, and eventually convicted of distributing illegal pamphlets and fined. *Id.* at 704-05. We concluded that the treatment did not amount to persecution. *See id.* at 708.

The harm inflicted on Mr. Grigorian was, in certain respects, similar to the harm inflicted on Mr. Saulo. But the similar treatment of Mr. Grigorian was, at most, no more severe, and it does not compel a finding of persecution. While it is true that, unlike Mr. Saulo, Mr. Grigorian alleged he was threatened by a gunshot, the IJ characterized Mr. Grigorian's account of that threat as vague, noting it was "probably impossible to tell on this record" whether the noise he identified as a gunshot was directed at him or not because he was not shot and his car was not hit. Admin. R. at 56. The evidence supported the IJ's characterization, and hence the threat was entitled to little probative value, *see Vatulev v. Ashcroft*, 354 F.3d 1207, 1210 (10th Cir. 2003) (explaining that vague and conclusory testimony concerning a threat undercuts its probative value). Although the IJ did not discuss Mr. Grigorian's statement that his interrogators "tried to threaten him," Admin. R. at 124, that statement also suffers from vagueness, rendering it of little probative value.

As to the denial of Mr. Grigorian's request for restriction on removal, we conclude that by challenging the IJ's past persecution findings before the BIA and in his petition for review, he exhausted his administrative remedies and

adequately presented the issue to this court. *See Niang v. Gonzales*, 422 F.3d 1187, 1195-96 (10th Cir. 2005) (explaining that, under 8 C.F.R. § 1208.16(b)(1), a rebuttable presumption of eligibility for restriction on removal may be established by a showing of past persecution). But because he cannot meet the standard required for eligibility for asylum, he cannot meet the higher standard required for restriction on removal. *See Uanreroro*, 443 F.3d at 1202. As to the denial of his request for CAT relief, we conclude that he failed to exhaust his administrative remedies, *see Rivera-Zurita*, 946 F.2d at 120 n.2, and in any event, as with the denial of restriction on removal, his failure to meet the asylum standard necessarily forecloses relief, *see Uanreroro*, 443 F.3d at 1202.

The petition for review is DISMISSED as to the unexhausted issues and DENIED in all other respects.

Entered for the Court


Stephanie K. Seymour
Circuit Judge
